632 So.2d 48 (1993)
William Thomas ZEIGLER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 80176.
Supreme Court of Florida.
November 4, 1993.
Rehearing Denied January 5, 1994.
*49 Dennis H. Tracey, III and John Houston Pope of Davis, Scott, Weber & Edwards, P.C., New York City, for appellant.
Robert A. Butterworth, Atty. Gen. and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
William Thomas Zeigler, Jr., a prisoner under sentence of death, appeals from the circuit court's denial of his petition under Florida Rule of Criminal Procedure 3.850. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Zeigler was convicted in 1976 of two counts of first-degree murder and two counts of second-degree murder and sentenced to death on both first-degree murder convictions. This Court affirmed the convictions and sentences on direct appeal. Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). Zeigler filed his first rule 3.850 motion in 1983 alleging eighteen grounds for relief. The circuit court initially denied all of the claims without a hearing. However, on *50 appeal this Court remanded for an evidentiary hearing on one of the claims. Zeigler v. State, 452 So.2d 537 (Fla. 1984). After the hearing, the circuit court again rejected the claim and this Court affirmed. Zeigler v. State, 473 So.2d 203 (Fla. 1985). In May 1986, Zeigler filed his second rule 3.850 motion. The circuit court ordered an evidentiary hearing on one of the issues but the State appealed and this Court reversed. State v. Zeigler, 494 So.2d 957 (Fla. 1986). In April 1988, this Court vacated Zeigler's death sentences and remanded the case for resentencing based on Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Zeigler v. Dugger, 524 So.2d 419 (Fla. 1988). Subsequently, Zeigler was resentenced to death and this Court affirmed. Zeigler v. State, 580 So.2d 127 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 390, 116 L.Ed.2d 340 (1991).
In March 1992, Zeigler filed his third motion for postconviction relief under rule 3.850.[1] In the motion, Zeigler raised five claims. The circuit court summarily rejected four of the claims but ordered an evidentiary hearing on one issue. After the hearing, the court rejected the remaining claim and this appeal ensued.
In the first claim in the rule 3.850 motion, Zeigler contended that, prior to his trial, the State failed to disclose the identity of known guilt phase witnesses whose testimony did not fit the State's theory of the case. In his second claim, Zeigler contended that the State withheld prior inconsistent statements by three witnesses who testified during the guilt phase of the trial. The circuit court found these claims procedurally barred.
Zeigler contends that the information necessary to identify and raise the two claims was not available or discoverable until 1987. Zeigler alleges that the material on which the claims are based was not disclosed by the State in 1982 when Zeigler's attorney first reviewed the State's file to identify claims which were subsequently raised in 1983 in Zeigler's first motion for postconviction relief. In April 1987, Zeigler requested and was granted access to the files of his case under the Florida Public Records Act, chapter 119, Florida Statutes (1987). Zeigler contends that the materials on which claims one and two are based were not discovered until his lawyers reviewed the files after the public records request. Under these circumstances, Zeigler argues that he should not now be barred from raising the claims because his inability to raise them in previous proceedings was due to the State's failure to disclose the materials in 1982 and not his own lack of diligence. We disagree.
Motions pursuant to rule 3.850 will not be considered "if filed more than 2 years after the judgment and sentence become final." Fla.R.Crim.P. 3.850(b). An individual whose judgment and sentence became final prior to January 1, 1985, had until January 1, 1987, to file under the rule. Id. One exception to the rule arises where "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla.R.Crim.P. 3.850(b)(1).
Even if the information on which Zeigler based his first two claims was not disclosed by the State in 1982, the information was provided pursuant to Zeigler's public records request in April 1987. The Public Records Act was available to Zeigler prior to January 1, 1987, the cut-off date for postconviction relief in this case insofar as guilt is concerned. In fact, Zeigler filed his second rule 3.850 motion in 1986, before the cut-off date, but did not avail himself to the Act at that time. Thus, it is clear that the information was ascertainable prior to 1987 through the exercise of due diligence. These issues are now barred. Demps v. State, 515 So.2d 196, 198 (Fla. 1987); Agan v. State, 560 So.2d 222 (Fla. 1990).
As his third claim under rule 3.850, Zeigler contended that the State fabricated evidence which was presented at trial, specifically a bullet discovered in an orange grove. After an evidentiary hearing on this issue, the circuit court rejected the claim, finding it untimely *51 and successive. The court further found that, even if the claim were not barred, it was not supported by the evidence.
This is Zeigler's third motion for postconviction relief. "A successive motion may be dismissed if it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the failure to raise those issues in a prior motion constitutes an abuse of process." Foster v. State, 614 So.2d 455, 458 (Fla. 1992). This bar can be overcome if the movant can show that the grounds asserted were not known and could not have been known to him at the time of his earlier motions. Id. In the instant case, however, Zeigler cannot justify his failure to raise the third issue in his previous motions.
Prior to his trial in 1976, Zeigler was aware of the existence of all of the witnesses he called to testify at the evidentiary hearing. Further, all of the witnesses were available to Zeigler since 1979 at the latest. Finally, Zeigler's original trial counsel testified at the evidentiary hearing that he suspected, prior to trial, that the bullet had been planted in the orange grove. Yet, no investigation of this matter was pursued until 1989. Under these circumstances, this claim is clearly successive and untimely.
In any event, the trial judge found that Zeigler "has presented no credible evidence to support his claim that the bullet recovered in a citrus grove in January 1976 was fabricated by the Orange County Sheriff's Office or by the State Attorney's Office of the Ninth Judicial Circuit, or any other State agency." The trial judge stated he did not believe the testimony of the two inmatetrusties who participated in the search of the citrus grove. The record supports the judge's rejection of this claim.
In his fourth claim under rule 3.850, Zeigler set forth a variety of allegations, all of which allegedly demonstrate a pattern of misconduct by the State. This claim was previously raised and rejected in a rule 3.850 motion, Zeigler v. State, 452 So.2d 537 (Fla. 1984), and there is nothing presented in the instant motion which would cause us to revisit that decision. This claim is procedurally barred.
As the fifth and final claim raised in his motion under rule 3.850, Zeigler contends that "the jury's verdict of guilt was tainted by judicial intervention into its deliberations tantamount to coercion." The circuit court found that this claim was previously litigated and, therefore, procedurally barred. On appeal, Zeigler argues that the trial court erred in determining that this claim was procedurally barred and that an evidentiary hearing is warranted.
As the basis for this claim, Zeigler alleges that near the end of the trial juror Brickell asked to speak to the judge outside the presence of other jurors to discuss "other jurors and decisions made before they [were] permitted to make them." The trial judge denied the request and a subsequent similar request even though Ms. Brickell at one point fainted because of the pressure in the jury room. The parties and the judge agreed to offer her the attendance of a physician, but she declined the offer. Zeigler further alleges that without consulting defense counsel, Judge Paul, who was then presiding, called Ms. Brickell's doctor and arranged for her to receive a prescription for valium.[2] After taking the valium, Zeigler claims, Ms. Brickell abandoned her holdout position and voted with the other jurors to convict Zeigler.
In denying this claim without a hearing, the trial judge[3] stated in his order:
Ground V of the Second Amended Motion relating to the alleged intoxication of a juror has previously been litigated and rejected on direct appeal and in the Defendant's first Motion for Post Conviction Relief. The allegation of "newly discovered evidence" is not sufficient to warrant the relief requested.
*52 The reference to prior proceedings in the judge's order was based on the fact that juror Brickell and other jurors were questioned at a hearing shortly following the trial. The questioning concerned Ms. Brickell's statement that there was possible misconduct by members of the jury and other allegations that the jurors had been improperly subjected to outside influences. At that time, Ms. Brickell testified that some of the other jurors did not have an open mind and declined to consider all of the evidence. She said she was originally a holdout juror, but the other jurors "pressured" her into changing her vote to guilty. However, she acknowledged having stated in open court that she agreed to a guilty verdict. Judge Paul found no basis for the claims of juror misconduct. Zeigler's contention that he should have been permitted to further interrogate the jurors was rejected on direct appeal. The reference in the current order to the first motion for postconviction relief pertained to a contention unsuccessfully raised in that motion that some of the jurors were under the influence of alcohol during their deliberations.
Because the focus of what is now alleged is somewhat different than that of the posttrial hearing as well as that contained in the first motion for postconviction relief, we are not inclined to impose a procedural bar to the current claim. However, the only "new fact" asserted in this motion is that the judge telephoned Ms. Brickell's doctor and arranged for her to receive a prescription for valium. All of the other circumstances concerning Ms. Brickell were part of the record of the first trial. Her concerns were thoroughly explored at the posttrial hearing. Her complaint was that the other jurors had already made up their minds about Zeigler's guilt and that they had pressured her into capitulating. She made no reference to being incapacitated or being under the influence of medication to the extent that her faculties were impaired.
Assuming the truth of the allegation, as we must for purposes of this review, it is clear that Ms. Brickell could not have obtained the valium unless her doctor prescribed it. Rather than judicial misconduct, this allegation simply reflects judicial concern for the well-being of one of the jurors who had fainted earlier in the trial. We know of no rule which prohibits jurors from taking medication, and so long as it does not affect their competency, this cannot be a basis for impugning their verdict. We do not believe that the allegation concerning the valium requires an evidentiary hearing.
Accordingly, we affirm the decision of the court below.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in part and dissents in part with an opinion.
BARKETT, Chief Justice, concurring in part and dissenting in part.
I concur with the majority's disposition of all claims except that pertaining to Juror Brickell's ingestion of valium. I agree with the majority that there is no rule prohibiting jurors from taking medication "so long as it does not affect their competency." Majority op. at 52. However, Juror Brickell's competency is the very question that Zeigler asks be resolved. As the majority implies, Zeigler surely would be entitled to a new trial if one of the jurors was impaired by medication to the point of acquiescing in the verdict without sufficient certainty. Zeigler alleges that Juror Brickell obtained and ingested valium. Enough information is available about the effects of the drug that it could be ascertained whether her competence was affected.
If intoxicants are used by jurors, a question arises as to the jury's competence, and the presumption is that the convicted defendant was injured. Gamble v. State, 44 Fla. 429, 435, 33 So. 471, 473 (1902). The burden then is on the State to show affirmatively that the use was so limited and moderate that the defendant was not harmed. Id. Consequently, at the very least I would require an evidentiary hearing on the issue of *53 whether Juror Brickell became impaired from the drug.
NOTES
[1] The motion is actually entitled "Second Amended Motion to Vacate Judgement and Sentence" and incorporates the original motion, filed in September 1988, and the amended motion, filed in October 1989.
[2] Zeigler alleges that he first learned of the valium prescription from a television program on the subject of Zeigler's trial which aired in 1989.
[3] Because Judge Paul has become a federal judge, the present postconviction proceedings are being handled by Judge Formet.