740 So.2d 506 (1999)
Ernest Charles DOWNS, Appellant,
v.
STATE of Florida, Appellee.
No. 90,510.
Supreme Court of Florida.
May 20, 1999.
Rehearing Denied September 17, 1999.
*507 Gregory C. Smith, Capital Collateral Representative, Northern Region, Andrew Thomas, Chief Assistant CCCNR and John A. Tomasino, Assistant CCCNR, Office of the Capital Collateral Representative, Tallahassee, Florida, for Appellant.
*508 Robert A. Butterworth, Attorney General, and Mark S. Dunn, Assistant Attorney General, Tallahassee, Florida, for Appellee.
PER CURIAM.
We have for review Ernest Charles Downs' appeal from the denial of his second motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the trial court's summary denial of Downs' 3.850 motion for postconviction relief.

MATERIAL FACTS
The facts in this case are set forth in greater detail in Downs v. State, 572 So.2d 895 (Fla.1990). In 1977, Downs was convicted of first-degree murder and conspiracy to commit first-degree murder and sentenced to death for the killing of Forrest Jerry Harris, Jr. The record indicates a man by the name of Ron Garelick formed a conspiracy to murder Harris for the purpose of collecting insurance proceeds. One of the conspirators, John Barfield, offered Downs $5000 to kill Harris. Downs agreed, and in order to accomplish this task, elicited the help of Larry Johnson. According to Johnson, Downs drove Harris to a remote location where Johnson was waiting and then shot Harris multiple times with a .25 caliber automatic pistol. Following conviction, the jury recommended a sentence of death, which the trial court followed after finding two aggravating factors[1] and no mitigating circumstances. This Court affirmed Downs' convictions and sentence. See Downs v. State, 386 So.2d 788 (Fla.1980), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980).
In 1982, Downs filed his first postconviction motion pursuant to rule 3.850 of the Florida Rules of Criminal Procedure, which included claims for ineffective assistance of counsel and withholding of material, exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After an evidentiary hearing, the trial court denied the motion. This Court affirmed the order of denial. See Downs v. State, 453 So.2d 1102 (Fla.1984). On August 18, 1987, the Governor signed a death warrant and Downs petitioned this Court for writ of habeas corpus and stay of execution, alleging a change in the law regarding mitigating circumstances. This Court granted the writ, stayed the warrant, and vacated Downs' sentence of death with instructions for the trial court to hold a new sentencing proceeding in accordance with the Supreme Court's decision in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (holding that trial court must consider both statutory and nonstatutory mitigating factors). See Downs v. Dugger, 514 So.2d 1069 (Fla.1987). Upon resentencing, the jury again recommended death by a vote of eight to four. The trial court followed the jury's recommendation, finding three aggravating factors[2] and ruling that the mitigating factors did not offset or overcome the evidence in aggravation. This Court affirmed Downs' sentence. See Downs v. State, 572 So.2d 895 (Fla.1990), cert. denied, 502 U.S. 829, 112 S.Ct. 101, 116 L.Ed.2d 72 (1991).
On November 30, 1992, Downs filed a second 3.850 motion, raising sixteen issues, including claims for noncompliance with a public records request, withholding of material, exculpatory evidence, and ineffective assistance of counsel. After several hearings on Downs' public records requests *509 and a Huff[3] hearing on Downs' remaining claims, the trial court summarily denied the motion, ruling that Downs' claims were either conclusively refuted by the record or procedurally barred. No evidentiary hearing was held. This appeal followed.

APPEAL
Downs raises fourteen issues on appeal.[4] Of the claims presented for our review, several may be disposed of summarily.[5] Downs' remaining claims, however, warrant some discussion.

*510 Public Records Request
Downs argues that certain state agencies failed to comply with his public records requests and that the trial court erred in refusing to conduct an evidentiary hearing on this matter. Downs claims the police file disclosed by the Jacksonville Sheriff's Office (JSO) does not contain all of the records in this case. He argues that specifically missing from this file are handwritten police notes of witnesses interviewed by the JSO. Downs contends the number of hours spent investigating the murder and the number of witnesses interviewed in this case indicates the JSO's file should have been much larger than the file actually disclosed. Downs further relies on testimony by Stephen Hicks, the records custodian for the JSO, who admitted at a hearing on the matter that he had no personal knowledge as to whether each department within the sheriffs office complied with the request. Accordingly, Downs argues he was entitled to an evidentiary hearing pursuant to our holding in Walton v. Dugger, 634 So.2d 1059 (Fla. 1993). We disagree.
Under rule 3.850, the trial court must hold an evidentiary hearing unless the motion and record conclusively show that the defendant is entitled to no relief. See Fla. R.Crim. Pro. 3.850; Lopez v. Singletary, 634 So.2d 1054, 1056 (Fla.1993); Provenzano, 561 So.2d at 543; Roberts v. State, 568 So.2d 1255, 1256 (Fla.1990). In Walton, the appellant was denied access to public records because the trial court held that such claims were not cognizable in 3.850 postconviction proceedings. On appeal, we held that the noncompliance with a public records request may properly be raised in a 3.850 motion. 634 So.2d at 1062. We then explained the procedure courts must follow in such proceedings:
When, as in the instant case, certain statutory exemptions are claimed by the party against whom the public records request has been filed or when doubt exists as to whether a particular document must be disclosed, the proper procedure is to furnish the document to the trial judge for an in camera inspection. See [State v.] Kokal[, 562 So.2d 324 (Fla. 1990)]. At that time, the trial judge can properly determine if the document is, in fact, subject to a public records disclosure. Under the circumstances of this case, the trial judge should have granted an evidentiary hearing to consider whether the exemptions applied or whether the requested documents were public records subject to disclosure.
Id. at 1061-62 (emphasis added).
Contrary to Downs' assertion, we do not read our opinion in Walton to require an evidentiary hearing in every case. Rather, we remanded for an evidentiary hearing in Walton because the trial court summarily denied Walton's motion on the mistaken belief that noncompliance with a public records request may not be raised in a rule 3.850 motion. Id. No such error occurred in the instant case.
Instead, we believe this case is controlled by our holding in Mendyk v. State, 707 So.2d 320 (Fla.1997). There, the defendant requested from the Hernando County Sheriffs Office an unedited version of a crime scene videotape and from the Pasco County Sheriffs Office handwritten notes or tape recordings of an interview with the defendant about an unrelated murder. We held that where it is undisputed the unedited videotape had once existed but was now missing, the trial court erred in denying Mendyk an opportunity to explore, by deposition or evidentiary hearing, the existence or location of the unedited videotape. Id. at 322. However, we held the error was harmless under the circumstances because an edited version was admitted at trial and there was no possibility the unedited video would have *511 contained any information that could form the basis of a claim under rule 3.850. Id.
We also found no error in the denial of Mendyk's request for handwritten notes or for recordings of his interview with the Pasco County Sheriffs Office. Id. The interviewing officer filed an uncontested affidavit stating that no notes or recordings existed. We held that "[i]n the absence of a showing that such notes or recording may have been made, the trial judge did not abuse his discretion in denying Mendyk's motion in this regard." Id. We reached a similar result in Mills v. State, 684 So.2d 801 (Fla.1996), wherein we found no error in the trial court's failure to order production of documents requested from the Leon County Sheriffs Department where the sheriffs department had denied having possession of the requested documents and the defendant had failed to demonstrate their existence. Id. at 805.
Here, both the state and the sheriffs office stated during a hearing on Downs' public records request that all documents had been disclosed and expressly denied the existence of any documents not otherwise included in the disclosed files. Further, Hicks testified that all documents given to him from the departments within the JSO were then disclosed to collateral counsel. Based on this testimony, the trial court denied Downs' motion to compel because the evidence was "uncontroverted that all records of JSO have been provided [to the] defense" and that "mere suspicion that there is more does not warrant an evidentiary hearing" under rule 3.850. Later, in its summary denial of Downs' 3.850 motion, the trial court again "ensured that the documents to which the defendant was entitled were provided to him."
Other than a recitation of the names of the investigating officers and the witnesses apparently interviewed during the criminal investigation,[6] Downs did not proffer or assert the existence of any evidence that such notes existed and were improperly being withheld. Rather, Downs' entire basis for concluding that investigative notes existed apparently was the relatively thin size of the sheriffs office file and the fact the record custodian did not know if all documents had been disclosed. While the record custodian admitted he had no knowledge as to whether all documents that had been requested were, in fact, given to him for disclosure, this fact alone does not mean additional materials existed and were withheld by the JSO. When considered in light of the State and JSO's assertion that all documents had been provided to collateral counsel, and in the absence of any colorable claim that handwritten police notes existed and were being withheld, we find the trial court did not abuse its discretion in denying Downs' motion for production or for an evidentiary hearing on this point.[7]See Mendyk, 707 So.2d at 322; Mills, 684 So.2d at 805. *512 Withheld Material, Exculpatory Evidence
Next, Downs contends the State withheld and continues to withhold material, exculpatory evidence. According to Downs, a handwritten memorandum heretofore withheld by the State reveals a police investigation into a possible link between Harris's death and his involvement in illegal banking activities at the American National Bank, where he was employed as vicepresident. Apparently, Harris had entered into a plea agreement with federal authorities regarding the illegal banking transactions and had agreed to cooperate with them by identifying other wrongdoers, including a man by the name of Harold Haimowitz. This memorandum, argues Downs, would prove that until Johnson came forward with the story that Downs killed Harris, the State focused their investigation on Harris's involvement in the illicit banking transactions and Haimowitz' possible connection to this murder. Further, Downs claims this evidence would show that Johnson, not Downs, was the triggerman.
This is Downs' second 3.850 motion. Under rule 3.850 "[a] successive motion may be dismissed if it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the failure to raise those issues in a prior motion constitutes an abuse of process." Foster v. State, 614 So.2d 455, 458 (Fla.1992); see also Zeigler v. State, 632 So.2d 48, 51 (Fla.1993). Although Downs raises this claim in the form of a Brady violation, Downs has not shown in his motion that this same claim could not have been raised at the time the initial 3.850 motion was filed; i.e., Downs has not demonstrated that this allegedly withheld memorandum could not have been discovered through the exercise of due diligence prior to the time the initial motion was filed.[8]See Mills, 684 So.2d at 804-05; Zeigler, 632 So.2d at 51. Indeed, the record in this case affirmatively demonstrates that both Downs and his attorney were familiar with Haimowitz' alleged involvement in this case, as well as the police investigation into this matter, and that Downs' attorney had conducted investigations into the veracity of this purported defense theory.
Downs' trial attorney, Richard Brown, was deposed on October 7, 1982, during which he admitted that upon Downs' advice he interviewed Haimowitz as to his knowledge of the events in this case. Brown further testified that he had attempted during trial to present evidence that "other persons" had a motive to kill Harris based on the fact Harris had agreed to testify concerning the illegal banking transactions. The record also indicates that Downs and his attorney were aware of police investigation into the banking matters. Brown deposed several of the investigating officers in 1977, during which they admitted to interviewing people at the American National Bank.[9] This evidence *513 undisputably indicates Downs was aware of the police investigation into matters at the bank and thus this claim is clearly successive and well outside the time limit for filing postconviction motions as far as the issue of guilt is concerned. See Zeigler, 632 So.2d at 51.
In any event, we find this claim to be without merit. To establish a claim based on the State's withholding of material, exculpatory evidence in violation of Brady v. Maryland, Downs must establish the following factors:
(1) that the Government possessed evidence favorable to the defendant ...; (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Melendez v. State, 718 So.2d 746, 748 (Fla. 1998) (quoting Hegwood v. State, 575 So.2d 170, 172 (Fla.1991)); see also Rivera v. State, 717 So.2d 477, 483 (Fla.1998); Jones v. State, 709 So.2d 512, 519 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 1350, 140 L.Ed.2d 499 (1998).
Downs has not satisfied any of the four prongs of this analysis. First, as noted above, both Downs and his attorney were aware of Harris's alleged banking activities and of Haimowitz' possible involvement in the murder as they had unsuccessfully attempted to introduce such evidence at trial. See Tompkins v. Dugger, 549 So.2d 1370, 1372 (Fla.1989) (finding no Brady violation where defense counsel knew of allegedly exculpatory evidence and had attempted to introduce the same evidence at trial). Second, it is questionable whether the handwritten memorandum supposedly withheld by the State contained evidence favorable to Downs. Downs did not include the memorandum in the record on appeal. Other than his vague reference to what the memorandum allegedly reveals, we are unable to determine whether this memorandum actually contained evidence favorable to the defense. Third, the State explicitly denies withholding any exculpatory evidence. Finally, even if we accept Downs' assertion as true, there is no reasonable possibility the outcome of the trial would have been different had defense counsel presented evidence of Haimowitz' possible connection to the murder. As the trial court noted, even if the jury heard evidence of Haimowitz' involvement, such evidence would merely have indicated that Haimowitz, and not Garelick, ordered the murder of Harris. This evidence does not change the fact the jury found Downs guilty of first-degree murder for his participation in the shooting incident. Further, Downs fails to explain how this evidence proves Johnson and not Downs was the "triggerman." Accordingly, we affirm the trial court's denial of this claim.[10]

Ineffective Assistance of Counsel
Downs raises several claims based on ineffective assistance of counsel. First, he asserts newly discovered evidence reveals that Downs' trial counsel, Richard Brown, *514 failed to investigate and present evidence of Haimowitz' possible connection to Harris's death and failed to effectively challenge the State's case. Second, Downs contends resentencing counsel failed to investigate and present mitigating evidence during the resentencing hearing. We find these claims to be either procedurally barred or without merit.
As for the claim for ineffective assistance of guilt phase counsel based on the alleged newly discovered evidence, we find this claim to be procedurally barred. Downs' initial sentence and conviction became final in 1980. Rule 3.850 expressly provides: "Any person whose judgment and sentence became final prior to January 1, 1985, shall have until January 1, 1987, to file a motion in accordance with this rule." Fla. R.Crim. P. 3.850 (1992). Accordingly, under rule 3.850, Downs had until January 1, 1987, at the latest, to request postconviction relief as far as the issue of guilt is concerned, unless he establishes the existence of newly discovered evidence. See Bolender v. State, 658 So.2d 82, 85 (Fla.1995). By definition, newly discovered evidence concerns facts that were "unknown by the trial court, by the party, or by counsel at the time of trial" and which could not have been discovered by the defendant or counsel through the use of due diligence. See Robinson v. State, 707 So.2d 688, 691 (Fla.1998). Because we find Downs was aware at the time of trial of the evidence he now claims is newly discovered, his claim for ineffective assistance of guilt-phase counsel based on newly discovered evidence is procedurally barred.[11] Accordingly, we find no error in the trial court's summary denial of this claim.
Unlike the claim based on ineffective assistance of guilt phase counsel, Downs' claim based on ineffective assistance of counsel during resentencing is not procedurally barred because it raises issues concerning counsel's performance during resentencing and was filed within the time limitations specified in the rule. In this claim, Downs argues resentencing counsel failed to adequately investigate and present mitigating evidence pertaining to the "true extent of the appalling conditions" under which Downs grew up. He contends the evidence would have shown that Downs grew up in an impoverished household, with a violent, alcoholic father who abused Downs physically and mentally and with a mother who resorted to alcohol to avoid the horrible family life and that Downs was starved for love and attention, and as a result, was forced to grow up without loving parental support or a male role model. In addition, the evidence would show that Downs' maternal grandmother married when she was only thirteen years of age, lost two children to unexplained deaths, and subsequently remarried three more times, each to abusive men; that Downs' mother married his father when she was only sixteen years of age; that his father continuously uprooted the family in search of employment; that Downs' father spent what little money he earned on alcohol and other women and subsequently abandoned Downs' family for another woman; that Downs started a shoe-shine business to raise money; that Downs suffered from headaches and a bedwetting disorder as a result of being beaten and abused and was forced by his mother to wear urine-stained clothing as a means of stopping him from wetting the bed; that after his father left, Downs and his family moved to Kansas to live with his maternal grandmother and her abusive husband; that he quit school, moved to Florida, and worked for a traveling circus; *515 that he enlisted in the army at the age of sixteen but later was discharged because of his age; that while in the army, Downs went AWOL several times, during the last of which he robbed a store and was sentenced to imprisonment in the Kansas State Industrial Reformatory, which sentence later was reduced to probation and placement in a foster home; that while in jail for the robbery charge, he obtained his high school equivalency diploma; that after prison, Downs married, had a child, and obtained a job with a construction company where his father worked in the hopes of rekindling his relationship with his father; that upon divorce from his first wife, he married a second woman, whom he later discovered was unfaithful to him; and that Downs was negatively influenced by his friendship with Larry Johnson. Downs claims that experts would have testified that this abuse-ridden background would support statutory mental mitigators.[12]
The trial court ruled:
[A] review of the testimony of defense witnesses at the resentencing hearing reveals that a substantial majority of the information set forth under this ground was in facts presented to the jury through the defendant's witnesses and exhibits. To the extent that the remainder of the proffered information was not presented, this Court finds that the information would have been cumulative to the evidence that was presented, and that there is no reasonable probability that the outcome of the sentencing proceeding would have been different had the proffered information been presented to the jury.
We agree with the trial court's conclusion. To warrant an evidentiary hearing on a claim for ineffective assistance of counsel, the movant must allege specific facts which are not conclusively rebutted by the record and which demonstrate deficient performance that prejudiced the defendant. See LeCroy v. Dugger, 727 So.2d 236 (Fla.1998); Mendyk v. State, 592 So.2d 1076, 1079 (Fla.), receded from on other grounds by Hoffman v. State, 613 So.2d 405 (Fla.1992); Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990); Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989). The Supreme Court in Strickland v. Washington set forth the elemental requirements for establishing claims based on ineffective assistance of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. 2052.
Upon our review of the record, we find Downs' claim to be without merit as it is conclusively refuted by the record in this case.[13] As the trial court noted, most, if *516 not all, of the evidence Downs claims should have been presented was in fact introduced during resentencing. On appeal, we summarized the mitigating evidence as follows:
Downs introduced character evidence to show that when he was a child, his father drank, beat his mother and the children, and then abandoned the family, leaving Downs, the eldest child, to help care for everyone his father left behind. At sixteen, Downs joined the army. The army discovered that he enlisted while under age, so it relegated Downs to kitchen-type duties. Downs then went AWOL, but eventually was honorably discharged. While AWOL, Downs returned to his family in Kansas, where he committed an attempted robbery and a robbery using a toy gun. He was put on probation, but he was sent to prison for violating probation because he left the foster home where he was living and returned to his mother and grandmother. In prison, Downs earned a high school graduate equivalency diploma and learned some construction skills. After his release in 1970, Downs went to the Jacksonville area where he married his first wife, had a daughter, and worked hard to provide for his family, even after divorcing his first wife. While in prison he helped his daughter to deal with her emotional problems, and he has remained friends with her mother. Several of Downs's former employers and business partners testified that they liked and trusted Downs, and that they would rehire him if he was released from prison. Richard Dugger, Secretary of the Department of Corrections, provided mitigating testimony, which the trial court sealed.
A forensic psychologist, Dr. Harry Krop, testified that Downs was insecure about his manhood and lacked self-respect. His emotional problem surfaced when, around the time of Harris's murder, Downs discovered photographs that revealed his second wife's infidelity and involvement with homosexual activity and pornography. Seeing those photographs "was basically demasculating ... bring[ing] forth a lot of his feelings of inadequacy, which he had a lot from childhood," Dr. Krop said. That caused Downs extreme stress, altering his personality and emotional state, and impairing his cognitive and emotional faculties at about the same time he joined the murder conspiracy. Based on his evaluation of Downs, interviews, and his review of testimony in this case, Dr. Krop concluded that Downs had strong potential for rehabilitation. However, Dr. Krop also concluded that Downs was not suffering from extreme mental or emotional disturbance at the time of the murder, and that he did have the capacity to appreciate the criminality of his conduct.
Downs, 572 So.2d at 898.
We agree with the trial court that to the extent Downs offers additional facts not previously presented at the resentencing hearing, such facts are cumulative to the evidence presented by Downs during the resentencing proceeding and, therefore, are insufficient to warrant relief under Strickland. See Card v. State, 497 So.2d 1169, 1176-77 (Fla.1986) (holding that counsel cannot be deemed ineffective for failure to present cumulative evidence). The additional facts merely lend further insight into Downs' unfortunate upbringing, an issue for which other substantial evidence was presented to the jury during resentencing.
More importantly, we do not believe Downs has demonstrated that these omissions "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at *517 687, 104 S.Ct. 2052. During resentencing, the trial court found three aggravating factors,[14] one of which was the murder was cold, calculated and premeditated. After weighing these factors against the mitigation actually presented, the trial court nevertheless found the mitigating evidence insufficient to outweigh the aggravating circumstances. Based on the cumulative nature of the additional mitigating evidence presented by Downs, it does not appear that this evidence would have altered the jury's recommendation in this case. Accordingly, we find no error in the trial court's summary denial of this claim. See Tompkins, 549 So.2d at 1373 (finding no prejudice in failure to present additional evidence of abused childhood and drug and alcohol addiction where such evidence, even if admitted, would not have affected outcome of penalty phase as it would have been outweighed by the three aggravating circumstances, including HAC and two prior convictions of violent felony).

Espinosa Error
Downs raises several issues contesting the constitutionality of the jury instructions for various aggravating factors in this case.[15] Accordingly, Downs argues that his sentence should be reversed because the judge and jury considered vague and invalid aggravating factors in violation of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (finding reversible error where either judge or jury considered invalid aggravating factor in determining sentence of death). We find this claim to be procedurally barred.
Espinosa was not decided until after Downs' direct appeal. Thus, to take advantage of its ruling in a postconviction proceeding, Downs must establish: (1) that trial counsel preserved the issue for appellate review by objecting to the jury instructions on vagueness grounds or by submitting an alternative instruction and (2) that appellate counsel raised the issue on appeal. See State v. Breedlove, 655 So.2d 74, 76 (Fla.1995); Lambrix v. Singletary, 641 So.2d 847, 848 (Fla.1994); James v. State, 615 So.2d 668, 669 (Fla. 1993). Because defense counsel did not object to these instructions during trial[16] or propose alternative instructions and did not challenge these claims on appeal, any challenges to the jury instructions themselves are procedurally barred from being raised for the first time in this postconviction proceeding. See Harvey, 656 So.2d at 1258 (rejecting on procedural grounds claims alleging Espinosa error, including unconstitutionally vague penalty-phase jury instructions).[17]
However, within this claim, Downs also argues counsel rendered ineffective assistance by not objecting to the various jury instructions.[18] At the time of Downs' *518 resentencing, the trial court used the standard jury instructions, which had been approved by this Court. See Brown v. State, 565 So.2d 304, 309 (Fla.1990) (affirming instruction on cold, calculated and premeditated aggravating factor), abrogated by Jackson v. State, 648 So.2d 85 (Fla.1994); Lightbourne v. State, 438 So.2d 380, 385 (Fla.1983) (upholding validity of aggravating and mitigating statute challenged on vagueness grounds). Thus, trial counsel cannot be deemed ineffective under the standards set forth in Strickland for not objecting to the constitutional validity of these instructions. See Harvey, 656 So.2d at 1258 (holding that counsel may not be deemed ineffective under Strickland for failing to object to jury instructions where this Court previously upheld validity of those instructions); Mendyk, 592 So.2d at 1080 ("When jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel."). Accordingly, we find no error in the trial court's summary denial of these claims.[19]

CONCLUSION
In sum, we affirm the trial court's order summarily denying all of the claims raised in Downs' motion for postconviction relief.
It is so ordered.
HARDING, C.J., SHAW, WELLS, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] These factors are: (1) the murder was committed for pecuniary gain, and (2) previous conviction of violent felony (attempted armed robbery and armed robbery).
[2] These aggravators include: (1) prior violent felony; (2) pecuniary gain; and (3) the murder was cold, calculated and premeditated. In its sentencing order, the trial court merged the pecuniary gain and CCP aggravating factors.
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] His claims are: (1) the trial court denied Downs' access to public records and failed to hold an evidentiary hearing; (2) the State withheld material, exculpatory evidence; (3) the trial court improperly instructed the jury on the cold, calculated and premeditated aggravator in violation of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and trial counsel rendered ineffective assistance by not objecting; (4) the trial court erred in instructing the jury on the previous conviction of a violent felony aggravator in violation of Espinosa and trial counsel rendered ineffective assistance by not objecting; (5) the trial court improperly instructed the jury on the pecuniary gain aggravator in violation of Espinosa and trial counsel rendered ineffective assistance by not objecting; (6) the trial court improperly instructed the jury that a single act could support two separate aggravating factors and trial counsel rendered ineffective assistance by not objecting; (7) Downs was denied a competent mental health evaluation; (8) Downs was denied effective assistance of counsel at the pretrial and guilt phases of the trial; (9) Downs is entitled to a new trial based on newly discovered evidence; (10) Downs was denied effective assistance of counsel at resentencing; (11) the trial court failed to address the existence of statutory and nonstatutory mitigating evidence at the resentencing hearing; (12) the jury instructions improperly shift the burden of proof in violation of Down's rights to due process; (13) the trial court failed to conduct an adequate inquiry under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); and (14) cumulative errors committed during the trial court proceedings denied Downs a fair trial.
[5] Issues (6), (7), (12) and (13) could and should have been raised on direct appeal and thus are procedurally barred. See Valle v. State, 705 So.2d 1331, 1335 (Fla.1997); Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla. 1995). As for issue (6), we find that claim to be without merit. See Fotopoulos v. State, 608 So.2d 784, 793 (Fla.1992) (rejecting as meritless claim that court improperly doubled CCP and pecuniary gain aggravating factors where such factors were distinct and not merely restatements of each other). Downs' corresponding argument in issue (6) that counsel rendered ineffective assistance of counsel is likewise without merit because counsel was not deficient in failing to object or request a limiting instruction, see Suarez v. State, 481 So.2d 1201 (Fla.1985) (finding no error in instructing jury on multiple aggravators so long as judge does not improperly double aggravators in sentencing order), and Downs has not demonstrated any prejudice according to the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because the trial court merged these factors in its sentencing order. We likewise find issue (7) to be without merit. On direct appeal, we noted the testimony by the mental health expert during the resentencing proceeding. It is apparent from this testimony that the expert was very familiar with Down's family background and mental health. The fact that Downs has found experts willing to testify more favorably concerning mental mitigating circumstances is of no consequence and does not entitle him to relief. See Provenzano v. Dugger, 561 So.2d 541, 546 (Fla.1990); Stano v. State, 520 So.2d 278, 281 (Fla.1988). Likewise, we find the ineffective assistance claim raised as a subclaim in issue (12) based on counsel's failure to object to burden shifting penalty-phase instructions to be without merit as a matter of law. See Harvey, 656 So.2d at 1257 (finding ineffective assistance claim based on counsel's failure to object to jury instructions that allegedly shifted burden of proof to defense to prove mitigators outweighed aggravators to be without merit as a matter of law). We decline to consider issue (11) pertaining to the trial court's lack of consideration of statutory and nonstatutory mitigating evidence because this claim was raised and considered on direct appeal. See Downs, 572 So.2d at 901. Claim (14), which alleges cumulative error, is without merit because we have considered all of the errors alleged by Downs and find none of them sufficient to warrant an evidentiary hearing in this case. Finally, interjected within issues (3), (4), (5), (6) and (12) are claims based on ineffective assistance of appellate counsel for failing to raise on appeal vagueness challenges to various penalty phase jury instructions. Claims for ineffective assistance of appellate counsel are not cognizable in a rule 3.850 motion for postconviction relief. see Groover v. Singletary, 656 So.2d 424 (Fla.1995); Chandler v. Dugger, 634 So.2d 1066, 1068 (Fla.1994), and are more appropriately raised in petitions for habeas corpus.
[6] During the July 18, 1994, hearing on his public records request, Downs listed the following officers involved in the criminal investigation: Detective D.L. Starling; Officer Fred Williams; and Sergeant Patrick Miles. Of these three, Downs claims he only received notes by Williams. The witnesses purportedly interviewed, but for whom no notes were received, include: Elaine Harris, Robert Browning, Gary Holmes, Chris Paolucci, Larry Johnson, Gerry Sapp, John Barfield, and Downs. During this hearing, collateral counsel conceded that interview notes might or might not exist for these witnesses.
[7] Downs also claims the trial court erred in permitting the State to present witness testimony (i.e., the records custodian), while denying Downs' the right to do the same. Downs relies on Johnson v. Singletary, 647 So.2d 106 (Fla.1994), for the proposition that he should have been allowed to present witnesses in support of his claim. In that case, Johnson provided several affidavits from witnesses who claimed that a man by the name of William Pruitt killed the victim. During the postconviction proceedings, the trial court permitted the state to present a rap sheet describing Pruitt differently from the description given by one of defendant's affiants. We noted in a footnote that under these circumstances the trial court should have given the defense the same opportunity to present witnesses. Id. While we agree that Downs should have been given the same opportunity as the state to present witnesses, we find any error in the trial court's failure to do so to be harmless under the circumstances. Unlike Johnson where the defense had presented evidence, via the affidavits, of Pruitt's alleged involvement in the homicide, Downs did not claim the existence of any evidence that the requested documents existed other than speculation based on the number of witnesses allegedly interviewed and the relatively thin file.
[8] In fact, Downs has not supplied either the trial court or this Court with any of the circumstances surrounding the discovery of this memorandum. The record does not disclose when the memorandum was disclosed by the State or under what conditions the memorandum was revealed.
[9] In 1977, Brown deposed several of the investigating officers in this case. The deposition testimony reveals that one of the officers, P.L. Miles, talked to several people at the American National Bank and interviewed one of Harris's business associates, who appeared to have paid Harris to arrange for a loan from the bank. Fred Williams, another investigating officer, admitted that he spoke to someone at the American National Bank and that Downs indicated to him during questioning that Harold Haimowitz was involved in the murder.
[10] In the alternative, Downs claims that because the state withheld this evidence, it rendered trial counsel ineffective (i.e., that had the state disclosed this information, trial counsel would have been able to contest the state's case and show that Johnson was the actual shooter). Because we find the underlying Brady claim to be without merit, we need not address the merits of Downs' corresponding ineffective assistance of counsel claim on this issue. See Rivera, 717 So.2d at 484 n. 8. We also note that in his first 3.850 motion, Downs alleged a claim for ineffective assistance of counsel based on trial counsel's focus on an "unreal defense" (i.e., that others possessed a motive to kill Harris). Downs now urges us to consider this formerly "unreal" theory of defense as grounds for relief in the instant 3.850 motion. Because Downs raised an ineffective assistance of counsel claim in his earlier motion, he may not raise the same claim, albeit on different facts, in this successive motion. See Aldridge v. State, 503 So.2d 1257 (Fla.1987).
[11] Downs also argues that to the extent this Court finds this claim should have been raised in the initial 3.850 motion, postconviction counsel rendered ineffective assistance for failing to do so. However, we have held that claims for ineffective assistance of postconviction counsel do not constitute a valid basis for relief. See Lambrix v. State, 698 So.2d 247, 248 (Fla.1996), cert. denied, ___ U.S. ___, 118 S.Ct. 1064, 140 L.Ed.2d 125 (1998).
[12] Downs does not state who these experts are or which mitigators would apply.
[13] We also hasten to point out that Downs waived his right to representation during the resentencing proceeding and counsel was appointed as "stand-by" counsel only. Downs then single-handedly voir dired the prospective jurors, cross-examined the State's witnesses, and questioned thirteen of the eighteen defense witnesses called to testify, a couple of whom included Downs' family members. Downs subsequently relinquished his right to self-representation near the end of the defense's case so appointed counsel could question Dr. Harry Krop, the mental health expert, and the final few witnesses, including Downs. Thus, to the extent Downs could have introduced mitigating evidence concerning his background, he may not complain on this appeal of counsel's failure to do the same. See Goode v. State, 403 So.2d 931, 933 (Fla.1981) (holding that where defendant knowingly waived right to counsel and was fully informed of perils of self-representation, and trial court appointed attorney for purpose of giving legal advice when needed, defendant acted as his own attorney and could not later complain that his "co-counsel" ineffectively "co-represented" him).
[14] As noted earlier in this opinion, the three aggravators were reduced to two upon the trial court's merger of the CCP and pecuniary gain aggravating factors.
[15] These aggravators are: (1) the murder was cold, calculated and premeditated (issue III on appeal); (2) prior conviction of violent felony (issue IV on appeal); and (3) murder committed for pecuniary gain (issue V on appeal).
[16] During resentencing, Downs objected to the CCP aggravator on the grounds its application in this case would violate the constitutional prohibition against ex post facto laws. No objection was made, however, as to vagueness.
[17] Downs also relies on Espinosa in claim six on appeal that the trial court improperly instructed the jury on both the CCP and pecuniary gain aggravating factors. Because Downs did not object to these instructions during trial or request a limiting instruction and appellate counsel did not challenge the allegedly improper doubling in appeal, any claim based on Espinosa-type error likewise is procedurally barred.
[18] Downs also argues appellate counsel rendered ineffective assistance by failing to challenge this issue on appeal. As noted in note 5, supra, such claims are not cognizable in 3.850 proceedings. See Groover. Nevertheless, we find this claim to be without merit because appellate counsel is not ineffective for failing to raise a claim that would have been rejected on appeal. See Lambrix, 641 So.2d at 848-49. The claim would have been rejected by this Court on appeal because the trial court used the approved standard jury instructions, the error had not been preserved in the court below, and Espinosa had not yet been decided. See id. at 849 n. 1.
[19] Because we do not find counsel's performance to be below that of reasonably competent representation, we need not reach the prejudice prong of the Strickland analysis. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").