596 So.2d 985 (1992)
Duane Eugene OWEN, Appellant,
v.
STATE of Florida, Appellee.
No. 68549.
Supreme Court of Florida.
January 23, 1992.
Rehearings Denied April 1, 1992.
*986 Craig Boudreau and Anthony J. Natale, West Palm Beach, for appellant.
Duane Eugene Owen, pro se.
Robert A. Butterworth, Atty. Gen., and John W. Tiedemann and Celia A. Terenzio, Asst. Attys. Gen., West Palm Beach, for appellee.
PER CURIAM.
Owen appeals his convictions for first-degree murder, sexual battery and burglary, and the imposition of the death penalty. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The body of the victim, Georgianna Worden, was discovered by her children on the morning of May 29, 1984, as they prepared for school. An intruder had forcibly entered the Boca Raton home during the night and bludgeoned Worden with a hammer as she slept, and then sexually assaulted her. Owen was arrested the following day on unrelated charges and was interrogated over several weeks. He eventually confessed to committing numerous crimes, *987 including the present murder and a similar murder in Delray Beach in March 1984. See Owen v. State, 560 So.2d 207 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990). At trial on the present murder, sexual battery and burglary, the evidence consisted of Owen's confession, his fingerprint on a library book at the murder scene, and other corroborating evidence. The jury returned guilty verdicts on the charges and recommended death by a vote of ten to two. The trial judge followed the jury's recommendation and imposed death, finding the aggravating circumstances[1] outweighed the mitigating.[2]

GUILT PHASE
Several of Owen's guilt phase issues can be disposed of briefly. He first alleges that his convictions for murder and sexual battery were improper because the victim was dead prior to sexual union. Whether the victim was alive or dead at the time of sexual union, however, is an issue of fact to be determined by the jury. Competent substantial evidence supports its finding. See Owen. Owen's next claim, that police lacked sufficient grounds for stopping and arresting him, is without merit. He was stopped and arrested based on outstanding warrants and photographic identifications made by two burglary victims. Owen's assertion that his statements to police were obtained through psychological coercion has already been rejected by this Court. Id. His claim that his confession was obtained in violation of the rules established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is without merit. He was routinely informed of his rights and voluntarily waived them.[3] Owen's argument that the jury was "death qualified" and "conviction prone" has already been rejected by this Court. See, e.g., Diaz v. State, 513 So.2d 1045 (Fla. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1022 (1988).
Owen raises three guilt phase issues in a pro se brief. He argues that his fifth amendment rights were violated when police failed to act on his request to speak with an assistant state attorney concerning charges that were to be filed against him. We are unaware of any constitutional right to consult with a state attorney. Owen also argues that his due process rights were violated when police failed to videotape every occasion when he was interviewed by police. We find this argument to be totally without merit.
In his third pro se argument, Owen contends that his confession to the Worden murder was obtained in violation of his Sixth Amendment right to counsel. As noted above, Owen was arrested on burglary charges and outstanding warrants on May 30, 1984. The following day, he attended first appearance, where he requested and received appointment of counsel on those charges. Owen confessed to the Worden murder on June 21, during police-initiated questioning. The next day, he attended first appearance on the murder charge and counsel was appointed. He was indicted on this charge on July 11.
The Sixth Amendment right to counsel attaches when "judicial criminal proceedings" begin:
The initiation of judicial criminal proceedings is far from a mere formalism. *988 It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.
Kirby v. Illinois, 406 U.S. 682, 689-90, 92 S.Ct. 1877, 1882-83, 32 L.Ed.2d 411 (1972).[4] Although adversary judicial proceedings may commence in a number of ways  via "formal charge, preliminary hearing, indictment, information, or arraignment," id. 406 U.S. at 689, 92 S.Ct. at 1882  the federal Court[5] and commentators[6] are in agreement *989 that such proceedings clearly have begun when an accused is placed in custody, haled before a magistrate on a warrant or formal complaint, and then tentatively charged with a particular crime at this initial appearance or "arraignment."[7]
Once the right attaches, an accused is entitled to assistance of counsel at each "critical stage" of the prosecution, including police questioning. Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Where the right has attached and been invoked, any subsequent waiver in the absence of counsel during police-initiated questioning is invalid. Id. The right to counsel, however, is offense-specific: attachment and invocation of the right on one charge imposes no restrictions on police inquiry concerning other charges against the same defendant. McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).
In the present case, although Owen's right to counsel had attached and been invoked on the initial burglary charge and outstanding warrants by the time of his first appearance on those offenses, this fact is unrelated to his rights concerning the Worden murder. His rights on the murder charge attached when he attended first appearance on that offense. Because the questioning session during which he confessed took place prior to this first appearance, Owen had no Sixth Amendment right to counsel at that time. Thus, no Sixth Amendment right was violated.

PENALTY PHASE
Although the trial judge heard "victim impact" testimony[8] from the victim's father, we find this harmless in light of the fact that the judge did not give this evidence any weight at sentencing. See Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). All of Owen's arguments that Florida's capital-sentencing scheme is unconstitutional have been rejected by this Court.[9]
During the penalty proceeding before the jury, the State introduced evidence of Owen's convictions in the Delray Beach murder, sexual battery, and armed burglary. See Owen. The trial court used these *990 convictions as a basis for finding as an aggravating factor that Owen had previously been convicted of another capital or violent felony. Owen now claims that he is entitled to a new sentencing proceeding because the Delray Beach convictions were subsequently reversed by this Court. Id. Based on our examination of the record, however, we conclude that use of this evidence was harmless error. Given the nature and extent of other evidence in aggravation presented to the jury we conclude that its recommendation would have been unchanged. We similarly conclude that the trial court's sentence would have been the same because the aggravating circumstance concerning prior conviction of a violent felony was adequately supported by Owen's conviction for attempted first-degree murder in a third case.
Owen's claim that the trial court erred in finding as an aggravating circumstance that the murder was committed during the course of a sexual battery or burglary is without merit in light of our discussion concerning sexual battery above. Sufficient evidence also supports the court's finding that the murder was especially heinous, atrocious, or cruel. The sleeping victim was struck on the head and face with five hammer blows. She awoke screaming and struggling after the first blow and lived for a period of from several minutes to an hour. Her neck was constricted with sufficient force to break the bones therein. She was sexually assaulted and the walls of her vagina were torn by a foreign object, such as the hammer handle. The court's finding that the murder was committed in a cold, calculated, and premeditated manner was also adequately established. Owen selected the victim, removed his own outer garments to prevent them from being soiled by blood, placed socks on his hands, broke into the home, closed and blocked the door to the children's room, selected a hammer and knife from the kitchen, and bludgeoned the sleeping victim before strangling and sexually assaulting her.
Based on the foregoing, we affirm the convictions and sentences. We disapprove language in Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988); and Keen v. State, 504 So.2d 396 (Fla. 1987), to the extent it is inconsistent with the Sixth Amendment analysis above.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
KOGAN, J., dissents with an opinion.
BARKETT, Justice, dissenting.
I dissent because I believe that the confession to the Worden murder was obtained in violation of Owen's right to counsel under article I, section 9 of the Florida Constitution. When Owen attended first appearance on the burglary charges and outstanding warrants, he requested and received appointment of counsel. For the reasons expressed in my partial dissenting opinion in Traylor v. State, 596 So.2d 957 (Fla. 1992) (Barkett, J., concurring in part, dissenting in part), I would find that police were thereafter prohibited from initiating any further interrogation as to any offense while Owen was in custody without his attorney's presence, and thus his confession was inadmissible. Because I cannot say that admission of the confession in this case was harmless beyond a reasonable doubt, I would reverse the convictions and sentences and remand for a new trial.
KOGAN, J., concurs.
KOGAN, Justice, dissenting.
I dissent for the reasons expressed more fully in my partial dissent to Traylor v. State, 596 So.2d 957 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part). Owen was appointed counsel in May 1984. I would hold inadmissible the uncounseled confession elicited through direct police contacts with Owen in June, during the period of his continued incarceration, based on my reading of article I, sections 9 and 16 of the Florida Constitution. I agree *991 with Justice Barkett that the error is not harmless, requiring a new trial.
NOTES
[1] The judge found four aggravating circumstances: The defendant had been previously convicted of a violent felony; the murder was committed during a burglary or sexual battery; the murder was especially heinous, atrocious, or cruel; and the murder was cold, calculated, and premeditated. See § 921.141(5), Fla. Stat. (1983).
[2] The judge considered the following claims made by the defense: Owen's mother died when he was very young; his alcoholic father committed suicide a year later; Owen and his brother were shuffled from one foster home to another until his brother finally ran away and left him; Owen was sexually and otherwise abused in the foster homes; Owen's mind "snapped" during the murder; he had enlisted twice in the army and aspired to be a policeman.
[3] We note that Owen's equivocal responses to questioning that resulted in reversal of his convictions in the Delray Beach killing took place after he confessed to the present crimes and are irrelevant here. See Owen v. State, 560 So.2d 207 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990).
[4] See also Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) ("Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him... ."). See also Maine v. Moulton, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) (citing above language from Williams with approval).
[5] See McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991) (Where defendant was arrested and taken before a court commissioner for his initial appearance: "It is undisputed, and we accept for purposes of the present case, that at the time petitioner provided the incriminating statements at issue, his Sixth Amendment right had attached and had been invoked with respect to the [offense], for which he had been formally charged." The Court added, "The Sixth Amendment right to counsel attaches at the first formal proceeding against an accused, and in most States ... free counsel is made available at that time and ordinarily requested." Id. 111 S.Ct. at 2210.); Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (Defendants were arrested and shortly later arraigned before the committing magistrate. The State, in the trial of one defendant, conceded that the Sixth Amendment right to counsel had attached at this initial appearance. The State, in the trial of the other, claimed it had not. The Court ruled unequivocally: "In view of the clear language in our decisions about the significance of arraignment, the State's argument is untenable," and this is so regardless of whether arraignment has the particular characteristics of "a critical stage requiring the presence of counsel." Id. at 629 n. 3, 106 S.Ct. at 1407 n. 3); Moran v. Burbine, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986) ("[A]fter the first charging proceeding the government may not deliberately elicit incriminating statements from an accused out of the presence of counsel."); Williams (Defendant was arrested and arraigned on the warrant within hours. The Court ruled: "There can be no doubt in the present case that judicial proceedings had been initiated against Williams... . A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in a Davenport courtroom, and he had been committed by the court to confinement in jail." 430 U.S. at 399, 97 S.Ct. at 1239).

The Court has ruled that the right to counsel can attach as early as the filing of the complaint in those cases where the complaint serves as a charging instrument. Moore v. Illinois, 434 U.S. 220, 228, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977) ("The prosecution in this case was commenced under Illinois law when the victim's complaint was filed in court.").
[6] See 2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 11.2, at 8 (Supp. 1991) ("[T]he initiation of adversary judicial proceedings ordinarily requires a formal commitment of the government to prosecute, as evidenced by the filing of charges. This can occur prior to the issuance of an indictment or information, as where the defendant is brought before the magistrate for an `arraignment' or `first appearance' on charges filed in the form of a complaint."); 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 6.4, at 468 (1984) ("[A]t least from the time defendant is brought into court and arraigned on the warrant (at which point it or the complaint underlying it becomes a tentative charging document) the Sixth Amendment right to counsel applies."); Joseph D. Grano, Kirby, Biggers, and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent?, 72 Mich.L.Rev. 717, 788-79 (1973) ("[A] convincing argument can be made that a criminal prosecution commences at least with the preliminary arraignment when a formal complaint is filed in court against the accused... . Professor Miller, supporting his exhaustive analysis of the charging function with extensive field study data, has called the decision to file a complaint `the heart of the charging process.' ... It would defy common sense to say that a criminal prosecution has not commenced against a defendant who, perhaps incarcerated and unable to afford judicially imposed bail, awaits preliminary examination on the authority of a charging document filed by the prosecutor, less typically by the police, and approved by a court of law."); Jerold H. Israel, Criminal Procedure, the Burger Court, and the Legacy of the Warren Court, 75 Mich.L.Rev. 1320, 1368-69 n. 226 (1977) ("Even though a complaint has been filed in the process of obtaining a warrant, adversary judicial criminal proceedings may be viewed as being initiated only after the accused is brought before a magistrate on that complaint... . This starting point would make sense from an administrative standpoint because counsel for the indigent defendant ordinarily would not be appointed until the defendant has appeared before the magistrate." (citations omitted)).
[7] The term "arraign" simply means to be called before a court officer and charged with a crime. The term commonly has two uses. First, it is used in the general sense to refer to the proceeding where an accused (who is now formally a defendant) is first taken to court and presented before a committing magistrate. The magistrate will confirm that the defendant is the person named in the formal complaint and will read aloud the charges contained in it. The magistrate will generally warn the defendant that he has the right to remain silent, that anything he says will be used against him, and that he has a right to a lawyer's help, either retained or appointed. No responsive pleading is made. The magistrate will then set bail. This proceeding is commonly called a "first appearance," "initial presentment," or "arraignment on the warrant." 1 Wayne R. LaFave & Jerome H. Israel, supra n. 6, § 1.4, at 21. Second, the term "arraignment" refers to the step in the prosecution where the defendant is brought before the trial court  not the committing magistrate  informed of the charges against him, and required to enter a plea. This proceeding is commonly called an "arraignment on the information or indictment." Id. at 26. As noted above, when the Court in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and Jackson said that the Sixth Amendment right to counsel attaches at "arraignment," it apparently was using the term in the first sense.
[8] We note that the federal Court has recently decided that use of certain types of victim impact evidence does not violate the federal constitution. See Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
[9] Owen claims that: The death penalty is cruel and unusual; the statutory mitigating circumstances are too restrictive; the aggravating circumstance that the murder was committed in the course of an enumerated felony fails to narrow the class of death-eligible defendants; and the death penalty is arbitrary and discriminatory.