742 So.2d 233 (1999)
Allen Lee DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 95,845.
Supreme Court of Florida.
July 1, 1999.
*234 Harry P. Brody, Assistant CCRC, and Martin J. McClain, Special Assistant CCRC, Capital Collateral Regional Counsel Middle Region, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, Richard B. Martell, Chief, Capital Appeals, and Curtis M. French, Assistant Attorney General, Tallahassee, Florida, for Appellee.
PER CURIAM.
Allen Lee Davis, a prisoner on death row and under a death warrant, appeals an order entered by the circuit court below denying his fourth postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850, his motion for a stay of execution, his motion to inspect the electric chair, and his motion to compel production of public records. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the denial of relief.
Davis was convicted and sentenced to death in 1983 for the murders of a woman and her five and ten-year-old daughters in their Jacksonville home. The relevant facts and procedural history in this case are set forth in our recent decision in Davis v. State, 24 Fla. L. Weekly S260, 736 So.2d 1156 (Fla.1999), in which we affirmed the circuit court's denial of Davis's third motion for postconviction relief. On June 9, 1999, the Governor signed a warrant setting Davis's execution for July 8, 1999.[1] On June 21, 1999, Davis filed in the circuit court his fourth rule 3.850 motion, along with the motions to compel, to grant a stay, and to inspect the electric chair. On June 21, the circuit court held a preliminary hearing, after which the court denied all of Davis's motions and issued a six-page order addressing the issues raised in the *235 rule 3.850 motion and the motion to compel.
In his rule 3.850 motion, Davis raised four claims in the circuit court. Davis's first three claims centered upon the allegation that Florida's electric chair in its present condition constitutes cruel and unusual punishment in violation of the United States and Florida constitutions.[2] Within his claim that the electric chair in its present condition is cruel or unusual punishment or both, Davis contended that the chair's electrical circuitry has malfunctioned in the four executions since our decision in Jones v. State, 701 So.2d 76 (Fla.1997), causing the inmates being electrocuted to suffer because death was not instantaneous, contrary to Jones, in which we affirmed a circuit court's finding after evidentiary hearings that Florida's electric chair "is in excellent condition." Id. at 77. Davis maintained that the circuit court in Jones relied upon false evidence in that work had been done on the electric chair that was not presented in the Jones evidentiary hearings. Davis also argued within this claim that the Department of Corrections' (DOC) protocol for executions is flawed and is not being followed, based on newly discovered evidence of reports by electrical engineers contracting with DOC to work on the electric chair. The circuit court below found that this Court had decided the bulk of this claim adverse to Davis in Jones. As to alleged newly discovered evidence, which is in the form of DOC records, the court found that the records actually refuted Davis's claim, in that the records demonstrate that DOC is maintaining, inspecting, and testing the electric chair regularly to ensure that the equipment is working properly. As to the portion of this claim contending that DOC has not followed its own protocol in carrying out executions, the circuit court found that the electrical engineer's report tendered by Davis to support his argument asserted that variations in chart records vary due to the size of an inmate and indicated no malfunction of the electrocution process. The court noted in its order that "the current protocol has resulted in the last four successful executions," and that Davis "has tendered nothing that would support a claim that those four inmates were not rendered unconscious almost instantaneously." State v. Davis, No. 82-4752-CF, order at 4 (Fla. 4th Cir. Ct. order filed June 22, 1999).
As to Davis's electric-chair claims, we issue today an opinion in Provenzano v. State, 739 So.2d 1150 (Fla.1999), addressing the same issues asserted by Davis in this appeal. In Provenzano, we held and we specifically adopt as our holding in this case the following:
[W]e find no error in the circuit court's reliance upon our decision in Jones. In 1998, DOC conducted four executions subsequent to our decision in Jones. Prior to each of these executions, the inmate who was under warrant claimed that the electric chair was cruel or unusual punishment in that apparent malfunctions had caused inmates to suffer during previous executions because death was not instantaneous. We found no merit in these similar claims or in the related claim of death row inmate Eduardo Lopez. See Lopez v. Singletary, 719 So.2d 287 (Fla.1998) (order); Remeta v. Singletary, 717 So.2d 536 (Fla.1998) (order); Buenoano v. State, *236 717 So.2d 529 (Fla.1998) (order); Stano v. Singletary, 692 So.2d 180 (Fla.1997); Jones, 701 So.2d at 80. As to the claim concerning work performed on the electric chair since the most recent executions, we affirm the circuit court's decision that there is an insufficient basis alleged to overcome the presumption that members of the executive branch will properly perform their duties in carrying out the next execution. See Buenoano v. State, 565 So.2d 309, 311 (Fla. 1990). We therefore reject Provenzano's claims as to the condition and operation of the electric chair. We do not reach any claim as to what might occur in future executions because we find such claims to be speculative.
Once again, we are troubled that there is an indication that DOC has not followed the protocol established for the appropriate functioning of the electric chair and carrying out of the death penalty. In Remeta, No. 92,679[, 717 So.2d 536], this Court entered an order requiring DOC to follow the previously published protocol ("Execution Day Procedures" and "Testing Procedures for Electric Chair," attached as appendices to this opinion) for carrying out executions. Despite questions raised regarding whether the protocol has been followed, there has been no showing that any of the last four executions caused "unnecessary and wanton pain" or involved "torture or a lingering death." Jones, 701 So.2d at 79. Based upon that and the State's continued representation that the protocol will immediately render any inmate being executed incapable of experiencing unnecessary and wanton pain, we decline to stay this execution.
However, we deem it appropriate that the results of any and all tests and any other records generated relating to the operation and functioning of the electric chair be promptly submitted to this Court, the Attorney General's Office, the regional offices of the Capital Collateral Regional Counsel (CCRC), and the capital cases statewide registry of attorneys, on an ongoing basis. By this, we contemplate an open file policy relating to any information regarding the operation and functioning of the electric chair. In light of the recent history regarding the execution of persons sentenced to death, we further direct DOC to certify prior to the execution of Provenzano and all other inmates under death warrant that the electric chair is able to perform consistent with the "Execution Day Procedure" and "Testing Procedures for Electric Chair." DOC must send copies of this certification to the Attorney General's Office and the attorney representing the inmate under death warrant.
Provenzano, 739 So.2d at 1153-54 (footnote omitted).
Related to Davis's public records claim in which he alleged that DOC has not produced relevant records as to the condition and operation of the electric chair, Davis argues in this appeal that the circuit judge violated Davis's constitutional right to due process at the hearing below when he denied Davis's counsel's request to call other witnesses after allowing a DOC attorney to state at the hearing that DOC had met its records disclosure requirements. Davis contends that the circuit judge compounded this error by stating that he did not consider the proceeding to be an evidentiary hearing but, subsequently, in his written order referring to the hearing below as an "evidentiary hearing." State v. Davis order at 2. We find that this was a harmless error on the part of the circuit judge in light of our holding in respect to the electric-chair issues.
In his final postconviction claim, Davis argued that newly discovered evidence of advanced medical technology not available at his trial in 1983 established the need for (1) a PET scan to determine whether Davis has a seizure disorder and (2) a subsequent evidentiary hearing to determine how PET scan results might affect Davis's conviction and sentence. The circuit court found that this claim was *237 procedurally barred as untimely in that this Court's opinion in Hoskins v. State, 24 Fla. L. Weekly S211, 735 So.2d 1281 (Fla. 1999), shows that PET scans "have been around for over two years." State v. Davis order at 5. The court found a further procedural bar in that Davis could have and should have raised this claim in his third postconviction motion, which was filed on April 15, 1998. The court also found the claim to be speculative in that Davis presented no PET-scan results to support his claim and meritless in that there is no reasonable probability that the outcome of the trial would have been different with the admission of PET-scan evidence. The court cited Davis v. Singletary, 853 F.Supp. 1492, 1544 (M.D.Fla. 1994), in which the federal district court referred to Davis's trial attorney's testimony in a federal hearing that Davis was able to relate to him his actions in committing the instant murders, thus negating any claim that Davis was unaware of what he was doing at the time of the crimes.
We agree with the circuit court that Davis's PET-scan claim is procedurally barred. As the circuit court ruled, this claim is procedurally barred as an abuse of process in that Davis could have and should have raised it in his postconviction motion which was filed on April 15, 1998. See Zeigler v. State, 632 So.2d 48 (Fla. 1993). Davis argues that raising the claim in the April 15, 1998, motion would have been impossible because the motion (his third postconviction motion) was filed a year prior to our decision in Hoskins,[3] in which we ordered a resentencing based on the failure of a trial judge to authorize a PET scan, and thus, Davis could not have discovered the evidence prior to May 13, 1999. However, we find Davis's postconviction claim to be distinguishable from Hoskins, in which the request for a PET scan was made prior to Hoskins' trial. Moreover, PET scans appear in cases reported as early as 1992. Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968 (8th Cir.1995); People v. Weinstein, 156 Misc.2d 34, 591 N.Y.S.2d 715 (N.Y.Sup.Ct. 1992).
We further find that the PET-scan claim, even if it were not procedurally barred, does not meet the second prong of the test in Jones v. State, 591 So.2d 911 (Fla.1991), for admission of newly discovered evidence. Under Jones, newly discovered evidence in a capital case must be of such nature that it would probably produce an acquittal or a life sentence on retrial. Id. at 915. Davis had pretrial neurological screening, including a CT scan and an electroencephalogram, which indicated no abnormalities and are consistent with the record of a postconviction proceeding reflecting that Davis told his trial attorney that he remembered committing the murders, thus negating any claim that his mind went blank during the crimes because he had suffered a seizure. Davis v. Singletary, 119 F.3d 1471, 1473-74 (11th Cir.1997); Davis v. Singletary, 853 F.Supp. at 1543-44. There is no probability that a PET scan performed more than seventeen years after these murders would bring about a different result upon retrial on the basis of this record. Moreover, Davis's death sentence is based upon five strong aggravators[4] and no mitigation, which reinforces the conclusion that a PET scan would be unlikely to produce a life sentence.
*238 Accordingly, for the reasons expressed, we affirm the circuit court's denial of Davis's rule 3.850 motion to vacate his judgment and sentence of death, as well as his motion for a stay of execution, his motion to inspect the electric chair, and his motion to compel production of records. No motion for rehearing will be permitted.
It is so ordered.
WELLS and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LEWIS, J., concurs.
LEWIS, J., concurs specially with an opinion, in which PARIENTE, J., concurs.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
HARDING, C.J., recused.
PARIENTE, J., concurring.
I concur for the reasons set forth in my concurring opinion in Provenzano v. State, 739 So.2d 1150 (Fla.1999).
LEWIS, J., concurs.
LEWIS, J., specially concurring.
I concur for the reasons set forth in my special concurrence in Provenzano v. State, 739 So.2d 1150 (Fla.1999).
PARIENTE, J., concurs.
ANSTEAD, J., concurring in part, dissenting in part:
It remains my view that death by electrocution constitutes cruel and unusual punishment in violation of both the state and federal constitutions. See Jones v. State, 701 So.2d 76, 88 (Fla.1997) (Anstead, J., dissenting).
SHAW, J., concurs.
NOTES
[1] This is the third warrant to be signed for the execution of Davis. The first warrant was signed on August 8, 1986, and the second was signed on February 12, 1992.
[2] In his rule 3.850 motion, Davis raised the following claims concerning Florida's electric chair: (1) Florida's electric chair in its present condition constitutes cruel and/or unusual punishment in violation of the United States and Florida constitutions; (2) Florida's use of electrocution as its sole method of execution is unconstitutional because it violates the evolving standards of decency that mark the progress of a maturing society; (3) State agencies have withheld access to public records pertaining to Davis's case in violation of chapter 119, Florida Statutes (1997), Florida Rule of Criminal Procedure 3.852, and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In his fourth claim, he asked the circuit court to order a PET scan to determine whether he had a seizure disorder and requested a subsequent evidentiary hearing as to the results of the PET scan.
[3] In Hoskins, we did not reach the issue of whether PET scan results would be admissible evidence at the resentencing. 735 So.2d at 1281, n.1.
[4] On direct appeal, this Court struck the trial court's finding of the aggravator of "avoid or prevent" arrest as to the murder of the younger child and affirmed these aggravating circumstances: (1) Davis was under sentence of imprisonment; (2) Davis had been previously convicted of a violent felony; (3) the murder was committed during the course of a burglary; (4) the murder was heinous, atrocious, or cruel (HAC); and (5) the murder was cold, calculated, and premeditated (CCP). Davis v. State, 461 So.2d 67, 71-72 (Fla.1984).