# Supreme Court of Florida

———————

No. SC2023-0732

———————

**DUANE EUGENE OWEN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 5, 2023

PER CURIAM.

Duane Eugene Owen has been sentenced to death for two murders he committed in 1984. On May 9, 2023, Governor Ron DeSantis signed a death warrant for the murder of Georgianna Worden, scheduling Owen's execution for June 15, 2023. Owen sought relief in the circuit court and now appeals three of its orders: (1) an order summarily denying his fourth postconviction motion filed under Florida Rule of Criminal Procedure 3.851; (2) an order denying his motion for competency determination; and (3) an order denying his motion for MRI and PET scan. We affirm all

three.  We also deny his motion for stay of execution and request for oral argument filed in this Court.[1]

## I

Georgianna Worden's children discovered her body as they prepared for school on the morning of May 29, 1984.  *Owen v. State* (*Owen I*), 596 So. 2d 985, 986 (Fla. 1992).  Owen had forcibly entered Ms. Worden's Boca Raton home during the night, beat her repeatedly on the head with a hammer as she slept, and then sexually assaulted her.  *Id.*  Owen was arrested the next day on unrelated charges.  He confessed to the murder and several other crimes, including the murder of Karen Slattery, whom he had killed in a similar fashion a few months earlier.  *Id.* at 986-87.

Owen was indicted for first-degree murder, sexual battery, and burglary in the Worden and Slattery cases.  *Id.* at 987.  He was tried for the Worden murder in 1986.[2]  *Id.*  The jury convicted him on all

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

2.  Owen was first tried, convicted, and sentenced to death in the Slattery case, but we reversed his convictions on direct appeal and remanded the case for retrial, which took place in 1999.  *Owen v. State* (*Owen II*), 773 So. 2d 510, 512-13, 513 n.6 (Fla. 2000).  Owen was again convicted in the Slattery case on retrial.  *Owen v. State*, 862 So. 2d 687, 690 (Fla. 2003).  The jury recommended, and

- 2 -

charges and recommended death by a vote of ten to two. *Id.* The

trial judge followed the jury's recommendation and imposed a death

sentence, finding that the aggravating factors[3] outweighed the

mitigating circumstances.[4] *Id.* at 987 & nn.1-2. On direct appeal,

this Court affirmed Owen's convictions and death sentence, *id.* at

986,[5] which became final when the United States Supreme Court

---

the trial court imposed, another death sentence for the murder of Ms. Slattery. *Id.* On direct appeal, this Court affirmed. *Id.* at 704.

3. The trial court found these four aggravating circumstances: (1) Owen had been previously convicted of a violent felony; (2) the murder was committed during a burglary or sexual battery; (3) the murder was especially heinous, atrocious, or cruel; and (4) the murder was cold, calculated, and premeditated. *Owen I,* 596 So. 2d at 987 n.1.

4. The trial court considered these six mitigating circumstances: (1) Owen's mother died when he was young; (2) his alcoholic father committed suicide a year later; (3) Owen and his brother were shuffled from one foster home to another until his brother finally ran away and left him; (4) Owen was sexually and otherwise abused in the foster homes; (5) Owen's mind "snapped" during the murder; and (6) he had enlisted twice in the army and aspired to be a police officer. *Owen I,* 596 So. 2d at 987 n.2.

5. Owen raised fifteen claims on direct appeal: (1) Owen's convictions for murder and sexual battery were improper because the victim was dead prior to sexual union; (2) the police lacked sufficient grounds for stopping and arresting Owen; (3) Owen's statements to law enforcement were obtained through psychological coercion; (4) Owen's confession was obtained in violation of the rules established in *Miranda v. Arizona,* 384 U.S. 436 (1966); (5) the

- 3 -

denied certiorari review in 1992, *Owen v. Florida*, 506 U.S. 921 (1992).

Since then, Owen has unsuccessfully challenged his convictions and death sentence in state and federal court. Owen's first motion for postconviction relief was denied after he elected not

_____

jury was "death qualified" and "conviction prone"; (6) Owen's Fifth Amendment rights were violated when police failed to act on his request to speak with an assistant state attorney about forthcoming charges against him; (7) Owen's due process rights were violated when police failed to videotape every occasion in which he faced police questioning; (8) Owen's confession to the Worden murder was obtained in violation of his Sixth Amendment right to counsel; (9) the trial judge erred by hearing victim-impact testimony from the victim's father; (10) the death penalty is cruel and unusual punishment in violation of the Eighth Amendment; (11) the statutory mitigating circumstances are too restrictive; (12) the aggravating circumstance that the murder was committed during an enumerated felony fails to narrow the class of death-eligible defendants; (13) the death penalty is arbitrary and discriminatory; (14) Owen is entitled to a new sentencing proceeding because his convictions and death sentence in the Slattery case were later reversed by this Court; and (15) the trial court erred in finding as an aggravating circumstance that the murder was committed during a sexual battery or burglary. *Owen I*, 596 So. 2d at 987-90.

to proceed with an evidentiary hearing.[6]  We affirmed.[7]  *Owen v.*

*State* (*Owen II*), 773 So. 2d 510, 511 (Fla. 2000).  We later affirmed

---

6.  Owen had been granted an evidentiary hearing on claims that his counsel had rendered ineffective assistance and failed to disclose various conflicts of interest.  *Owen II*, 773 So. 2d at 512-13.  But after the first witness finished testifying at the hearing, Owen declined to proceed; even though the trial court had agreed to bar disclosure of privileged information, Owen claimed that going on with the hearing would force him to waive attorney-client privilege in the pending Slattery retrial.  *Id.* at 513.  After the trial court explained the consequences of Owen's decision and confirmed that he still did not wish to proceed, it ended the hearing and later denied relief.

7.  Owen raised eighteen claims on appeal: (1) the trial court should have stayed the hearing pending completion of the retrial on the Slattery murder; (2) the trial court should have conducted a hearing under *Faretta v. California*, 422 U.S. 806 (1975), when Owen opted not to proceed with the evidentiary hearing; (3) Owen's trial counsel was ineffective and suffered a conflict of interest; (4) the instruction on the aggravating factor "heinous, atrocious, or cruel" (HAC) was improper under *Espinosa v. Florida*, 505 U.S. 1079 (1992); (5) the felony murder instruction was improper; (6) the "avoiding arrest" instruction was improper; (7) the "prior violent felony" instruction was improper; (8) the instruction on the "cold, calculated, and premeditated" (CCP) factor was improper; (9) details of prior violent felonies were improperly admitted during the penalty phase; (10) Owen's counsel was ineffective during the suppression hearing; (11) the penalty phase instructions improperly shifted the burden of proof to the defendant; (12) the penalty phase jury was improperly instructed concerning its role in violation of *Caldwell v. Mississippi*, 472 U.S. 320 (1985); (13) the prosecutor made inflammatory remarks during closing argument; (14) Owen should have been allowed to poll the jurors; (15) the trial court erred in failing to allow a change of venue; (16) Florida's capital sentencing statute is unconstitutional; (17) the video of the crime scene was

- 5 -

the denial of Owen's second motion for postconviction relief.[8]  *Owen*

*v. Crosby* (*Owen III*), 854 So. 2d 182 (Fla. 2003).  We also denied

Owen's petition for a writ of habeas corpus, filed on September 28,

2001.[9]  *Id.*  Additionally, Owen sought and was denied federal relief.

---

unduly prejudicial; and (18) the cumulative weight of errors deprived Owen of a fair trial.  *Owen II*, 773 So. 2d at 513 n.5.

8.  Owen raised these five claims: (1) the trial court erred by failing to grant Owen an evidentiary hearing on his claim that prior postconviction counsel was ineffective because of a conflict of interest; (2) the trial court should have granted Owen an evidentiary hearing on his claim that he received ineffective assistance of counsel during the litigation of his initial motion for postconviction relief; (3) the trial court erred by finding that Owen's claim of actual innocence was procedurally barred; (4) the trial court erred in summarily denying Owen's claim that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (5) the trial court's order denying Owen's second postconviction motion was inadequate because the court failed to specify what information from the record it considered in reaching its decision.  *Owen III*, 854 So. 2d at 187 n.4.

9.  Owen raised eleven grounds for relief: (1) Owen's appellate counsel was ineffective for failing to raise and argue on direct appeal that Owen was denied a fair trial because of the admission into evidence of statements he made during plea negotiations with the State; (2) Owen's appellate counsel was ineffective for failing to raise and argue that the venire from which the jury was selected in Owen's trial was unconstitutional because it excluded African Americans; (3) Owen's appellate counsel was ineffective for failing to raise and argue on direct appeal that the trial court should have declared a mistrial or struck a law enforcement officer's improper statement from the record; (4) Owen's appellate counsel was ineffective for failing to raise and argue on direct appeal that Owen

- 6 -

*Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894 (11th Cir. 2009).[10]  We

then affirmed the denial of Owen's third postconviction motion

was denied due process of law because the trial judge was biased toward the State and should have recused himself; (5) Owen's appellate counsel was ineffective for failing to raise and argue on direct appeal the trial court's denial of Owen's jury instruction on the difference between sexual battery and vaginal penetration of a deceased individual killed before any sexual contact; (6) Owen's appellate counsel ineffectively raised and argued the sufficiency of the State's evidence used to prove the aggravators and failed to argue that the trial court did not properly consider all of the mitigation in favor of Owen; (7) Owen's sentence on the noncapital cases is illegal because his offenses predated the effective date of the sentencing guidelines used by the trial court; (8) Owen's appellate counsel was ineffective for failing to cite controlling authority on whether Owen's confession was involuntary; (9) the Florida death penalty sentencing statute as applied is unconstitutional under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; (10) Owen's Eighth Amendment right against cruel and unusual punishment will be violated because he may be incompetent at the time of execution; and (11) this Court erred by not appointing conflict-free counsel for Owen's direct appeal.  *Owen III*, 854 So. 2d at 188 n.6.

10.  Owen raised these eighteen claims in the United States District Court for the Southern District of Florida: (1) Owen's trial counsel was ineffective for failing to suppress his statements to police, and Owen was not afforded a fair opportunity to present evidence to establish his ineffective assistance claims; (2) Owen's motion to suppress his confession should have been granted; (3) Owen was denied due process when the this Court allowed Owen's conviction for sexual battery to stand without evidence proving that he committed the offense; (4) Owen's trial counsels' failure to disclose conflicts of interest denied Owen the effective assistance of counsel; (5) Owen was denied relief on the properly pled *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] Claim, which Owen discovered in

- 7 -

1999 while pending retrial in the Slattery case; (6) Owen was denied the effective assistance of counsel because his counsel failed to provide the mental health experts with available information needed to make an accurate competency determination, and the State withheld material exculpatory information needed to reach such a determination; (7) Owen's convictions and death sentence are unreliable because he was denied effective assistance of counsel at the guilt phase of his trial for the failure of his counsel to adequately investigate and prepare the defense case and challenge the State's case without full adversarial testing; (8) Owen was deprived of his right to reliable adversarial testing and denied the effective assistance of counsel at the penalty phase of his trial; (9) Owen was deprived of his right to effective assistance of counsel in violation of his rights to due process and equal protection; (10) this Court denied Owen the right to effective and conflict-free appellate counsel or a finding of fact on whether there was conflict of interest between Owen and appellate counsel; (11) Owen's appellate counsel was ineffective for failing to raise and argue on direct appeal that the trial court should have declared, or granted Owen's motion for, a mistrial or struck improper statement that the "hurting would start all over again"; (12) Owen's appellate counsel was ineffective for failing to raise and argue on direct appeal that he was denied a fair trial because of the admission into evidence of statements he made during plea negotiations; (13) Owen's appellate counsel was ineffective for failing to raise and argue on direct appeal that Owen was denied due process because the trial court was biased toward the State and should have recused itself; (14) Owen's appellate counsel was ineffective for failing to cite precedent and the record on whether Owen's confession was involuntary, thus denying the federal court the opportunity for meaningful review; (15) Owen's appellate counsel was ineffective by inadequately raising issue with the sufficiency of the State's evidence used to prove the aggravators against Owen and by failing to argue that the trial court disregarded some mitigation; (16) Owen was denied due process and effective assistance of appellate counsel in his direct appeal when this Court allowed his conviction for sexual battery to stand and denied his claim of ineffective assistance of appellate counsel for failure to raise issue with the trial court's denial of the relevant jury

- 8 -

seeking relief from his death sentence under the U.S. Supreme Court's decision in *Hurst v. Florida*, 577 U.S. 92 (2016), and this Court's decision on remand in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020). *Owen v. State* (*Owen IV*), 247 So. 3d 394, 395 (Fla. 2018).

Owen filed his fourth motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 after the Governor signed his death warrant.[11] The circuit court, after holding a *Huff*[12]

---

instruction; (17) Florida's capital sentencing scheme was unconstitutional as applied; and (18) the jury that recommended death was unconstitutionally instructed and improperly considered unconstitutional aggravators. *Owen v. Crosby*, No. 03-81152-CIV, 2007 WL 9719051, at *1-2 (S.D. Fla. Sept. 6, 2007), *aff'd sub nom. Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894 (11th Cir. 2009).

11. Owen's counsel has since submitted a letter to the Governor stating that Owen appears to be insane. Following section 922.07, Florida Statutes (2022), the Governor appointed a commission of three psychiatrists to examine Owen and temporarily stayed execution of the sentence pending receipt of the commission's report. Fla. Exec. Order No. 23-106 (May 22, 2023). On May 25, 2023, the Governor adopted the commission's conclusion that "O[wen] has the mental capacity to understand the nature of the death penalty and the reasons why it is to be imposed upon him" and lifted the temporary stay. Fla. Exec. Order No. 23-116 (May 25, 2023).

12. In *Huff v. State*, 622 So. 2d 982, 983 (Fla. 1993), we decided that in proceedings for an initial postconviction motion where the death penalty has been imposed, the trial court must

- 9 -

hearing, summarily denied relief on all four claims: (1) that he was denied due process in his first postconviction proceeding because the court failed to stay Owen's evidentiary hearing or conduct a proper inquiry before allowing Owen to waive his constitutional rights; (2) that Owen obtained newly discovered evidence about his brain damage, declining mental condition, and competency; (3) that Owen's severe mental illness should bar execution under the Eighth and Fourteenth Amendments; and (4) that the Eighth Amendment prohibits Owen's execution after thirty-seven years on death row. The circuit court also denied his motion for determination of competency, his motion for MRI and PET scan, and his motion for stay of execution.

Owen now appeals the denial of his postconviction motion and raises four issues. Additionally, he appeals the denial of his motion for competency determination and his motion for MRI and PET

---

hold a hearing "for the purpose of determining whether an evidentiary hearing is required and to hear legal argument relating to the motion." This requirement was later expanded to include successive postconviction motions under Florida Rule of Criminal Procedure 3.851(f)(5)(B). *See Taylor v. State*, 260 So. 3d 151, 157 (Fla. 2018).

scan. Owen also moves this Court for a stay of execution and requests oral argument.

## II

### A

"Summary denial of a successive postconviction motion is appropriate '[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief.' " *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021) (alteration in original) (quoting Fla. R. Crim. P. 3.851(f)(5)(B)). We review "the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief." *Walton v. State*, 3 So. 3d 1000, 1005 (Fla. 2009). That is the case here.

### 1

In his first issue on appeal, Owen claims that he was denied due process in his initial postconviction proceeding because, he alleges, he did not properly waive an evidentiary hearing and multiple ineffective assistance of counsel claims. Owen argues that the trial court should have stayed the evidentiary hearing until the

Slattery retrial concluded or conducted a *Faretta*-type[13] inquiry before allowing him to waive the hearing and ineffective assistance claims.[14]  He seeks a new evidentiary hearing and a determination of the ineffective assistance of counsel claims on the merits.  The circuit court below summarily denied this claim, finding it both procedurally barred and untimely.  We agree.

Postconviction claims in capital cases must generally be filed within one year after the judgment and sentence become final.  Fla. R. Crim. P. 3.851(d)(1).  Owen's judgment of conviction and

---

13.  *Faretta v. California*, 422 U.S. 806 (1975).

14.  Owen otherwise suggests that the trial court could have summarily denied these claims rather than denying them after granting an evidentiary hearing.  That way, Owen submits, the claims could have been heard based on the factual allegations presented in the postconviction motion so long as the record did not "conclusively refute[]" the allegations.  *See Ventura v. State*, 2 So. 3d 194, 198 (Fla. 2009).  To the extent that we have not addressed this argument before, it is untimely and procedurally barred, as Owen could have raised it in his initial postconviction proceeding over twenty years ago.  *See Atkins v. State*, 663 So. 2d 624, 626 (Fla. 1995) (holding that an issue was procedurally barred "because it should have been raised in prior collateral proceedings"); Fla. R. Crim. P. 3.851(e)(2) ("A claim raised in a successive motion shall be dismissed if . . . the trial court finds there was no good cause for failing to assert those grounds in a prior motion . . . or, if the trial court finds the claim fails to meet the time limitation exceptions set forth in subdivision (d)(2)(A), (d)(2)(B), or (d)(2)(C).").

sentence of death became final when the U.S. Supreme Court denied his petition for writ of certiorari in 1992. *Owen v. Florida*, 506 U.S. 921 (1992); *see* Fla. R. Crim. P. 3.851(d)(1)(B) (providing that a judgment is final "on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed"). And Owen's waiver of the evidentiary hearing for the ineffective assistance claims occurred in 1997—over 25 years ago. Though there are exceptions to the time bar, *see* Florida Rule of Criminal Procedure 3.851(d)(2)(A)-(C), Owen has not shown that any of them apply, meaning he has failed to "establish the timeliness of [this] successive postconviction claim," *Mungin v. State*, 320 So. 3d 624, 626 (Fla. 2020). The circuit court thus properly summarily denied this claim as untimely. *See* Fla. R. Crim. P. 3.851(e)(2) ("A claim raised in a successive motion shall be dismissed . . . if the trial court finds the claim fails to meet the time limitation exceptions set forth in subdivision (d)(2)(A), (d)(2)(B), or (d)(2)(C).").

This claim is also procedurally barred. "Claims raised and rejected in prior postconviction proceedings are procedurally barred from being relitigated in a successive motion." *Hendrix v. State*, 136 So. 3d 1122, 1125 (Fla. 2014). This Court has twice before rejected

- 13 -

Owen's challenge to the validity of his waiver, and once before rejected his challenge to the trial court's handling of the evidentiary hearing.

We first rejected Owen's arguments when we affirmed the trial court's denial of Owen's initial motion for postconviction relief. *See Owen II*, 773 So. 2d at 514-15. Owen argued, among other things, that "he did not receive the due process to which he was entitled when the circuit court judge prevented him from litigating his Rule 3.850 motion because he invoked his attorney-client privilege relating to his pending capital retrial." Initial Brief of Appellant at 16, *Owen II*. Even considering Owen's attorney-client privilege, Owen contended, "the court forced counsel to proceed" rather "than stay[ing] the proceedings until the Slattery case was resolved." *Id.* at 27. We, however, found "no abuse of discretion in the manner in which the court conducted the hearing." *Owen II*, 773 So. 2d at 515.

Owen also argued that the trial court "failed to conduct a *Faretta*-type evaluation to determine whether [he] understood the consequences of what the court characterized as a waiver of his postconviction proceedings." Initial Brief of Appellant at 39, *Owen*

*II.* As a result, Owen asserted that the "record does not affirmatively demonstrate that [he] knowingly, intelligently and voluntarily waived his postconviction proceedings." *Id.* We, though, said that "the principles underlying *Faretta* are applicable only when a defendant in a criminal case seeks to waive professional legal representation and proceed unrepresented." *Owen II*, 773 So. 2d at 515. And after reviewing the record, we concluded "that collateral counsel and Owen *jointly* made the strategic decision to end the evidentiary hearing." *Id.* Thus, because Owen's ineffective assistance of counsel claims were "fact-based issue[s]," and Owen "opted to forego" the evidentiary hearing, we determined that Owen waived them. *Id.*

In his second postconviction motion, Owen again challenged the validity of his waiver, and we again denied relief. This time, using "a different argument to relitigate the same issue," *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990), Owen argued that his waiver stemmed from the ineffective assistance of collateral counsel in his first postconviction proceeding. Owen alleged that collateral counsel had a conflict of interest because counsel shared experts and information with his trial counsel in the Slattery retrial, which

- 15 -

put "his post-conviction proceedings on a collision course towards default." Defendant's Pro-Se Motion for Post-Conviction Relief and/or for Extraordinary Writ at 7, *Owen III*. He also claimed that collateral counsel breached their "duty to provide effective representation . . . during the post-conviction evidentiary hearing when [counsel] advised [Owen] not to proceed with the hearing . . . ." *Id.* at 9. According to Owen, "[t]his was erroneous advise [sic] which created an ineffective waiver," and so the waiver of his postconviction claims should have been attributed to collateral counsel, not him. *Id.* at 10.[15] The trial court denied these claims, and we affirmed, finding that they were procedurally barred. *See Owen III*, 854 So. 2d at 187.[16]

---

15. Owen also brought an actual innocence claim based partially on the ineffectiveness of trial counsel. Defendant's Pro-Se Motion for Post-Conviction Relief and/or for Extraordinary Writ at 11, *Owen III*. As with Owen's other claims, we found this claim to be procedurally barred. *Owen III*, 854 So. 2d at 187.

16. Owen also challenged his waiver of the evidentiary hearing in federal habeas proceedings. The United States Court of Appeals for the Eleventh Circuit concluded that "the record fully supports the 3.850 court's and the Florida Supreme Court's findings that Owen failed to proceed in good faith at the 3.850 evidentiary hearing and thereby waived his 3.850 evidentiary hearing claims." *Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894, 909 (11th Cir. 2009). The Eleventh Circuit noted that "Owen refused to avail himself of

Because Owen's arguments on this issue have "already been raised and considered by this Court in prior proceedings," Owen's due process claim is procedurally barred. *Thompson v. State*, 759 So. 2d 650, 657 (Fla. 2000). And the circuit court properly summarily denied it on this basis. *See Matthews v. State*, 288 So. 3d 1050, 1060 (Fla. 2019) (noting that a court "may summarily deny a postconviction claim when the claim is . . . procedurally barred . . . ."); Fla. R. Crim. P. 3.851(e)(2) ("A claim raised in a successive motion shall be dismissed if the trial court finds that it fails to allege new or different grounds for relief and the prior determination was on the merits . . . .").

We decline Owen's invitation to reconsider our prior ruling on the validity of his waiver and affirm the circuit court's summary denial. *See Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993) ("This claim was previously raised and rejected in a [postconviction]

---

the opportunity to present at least some evidence at the Worden 3.850 evidentiary hearing" and that the "record belies Owen's argument that Owen's waiver of his 3.850 claims was invalid because he did not fully understand the consequences of his decision not to proceed at the evidentiary hearing." *Id.* at 912 & n.18.

motion . . . and there is nothing presented in the instant motion which would cause us to revisit that decision.").[17]

**2**

Next, Owen asserts that the circuit court erred by summarily denying his argument over his alleged brain damage, declining mental condition, and incompetency. We reject this claim, for we agree with the circuit court that Owen's argument is both untimely and procedurally barred.

Owen's allegedly declining mental condition[18] and alleged incompetence to proceed with postconviction litigation[19] are

_____

17. The circuit court did not expressly pass on Owen's argument that it should overlook the time and procedural bars to correct a "manifest injustice." *State v. McBride*, 848 So. 2d 287, 292 (Fla. 2003). We find no error in the circuit court's refusal to do so. *See Gaskin v. State*, 48 Fla. L. Weekly S57, S59 (Fla. Apr. 6, 2023) (concluding that the petitioner's arguments were "insufficient to overcome the procedural bar").

18. Owen alleges that it is "also clear that [his] declining mental condition, schizophrenia, and fixed delusions . . . place [him] outside of the class of individuals allowed to be executed." Initial Brief of the Appellant at 58.

19. "Dr. Eisenstein's [May 15, 2023] evaluation of Owen revealed that Owen is not competent to proceed in postconviction proceedings. . . . Owen is 'unable to provide legal counsel with any significant assistance at the present time.' " Initial Brief of the Appellant at 55-56 (quoting Dr. Eisenstein's report).

relevant only to his invocation of section 922.07(1), Florida Statutes,[20] and his appeal of the circuit court's denial of his Motion for a Determination of Competency under Florida Rule of Criminal Procedure 3.851(g), respectively.

The circuit court correctly determined that Owen's brain damage claim is untimely. Again, about three decades have passed since his conviction and sentence became final in 1992, and—as with his first claim—none of the three exceptions under Florida Rule of Criminal Procedure 3.851(d)(2) apply. Contrary to what Owen argues, his brain damage claim does not constitute newly discovered evidence under the *Jones v. State*, 709 So. 2d 512 (Fla. 1998), two-part test:

> First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence." Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.

---

20. Separate proceedings concerning Owen's alleged insanity to be executed are underway pursuant to Florida Rules of Criminal Procedure 3.811 and 3.812.

- 19 -

*Id.* at 521 (alteration in original) (citation omitted) (quoting

*Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324-25 (Fla.

1994)).  And when an appellant is challenging his sentence

instead of (or together with) his conviction, the second prong

will instead (or also) "require[] that the newly discovered

evidence would probably yield a less severe sentence."  *Long v.*

*State*, 271 So. 3d 938, 942 (Fla. 2019) (alteration in original)

(quoting *Walton v. State*, 246 So. 3d 246, 249 (Fla. 2018)).

Neither of those elements can be established here.  As to the

first *Jones* prong, Owen himself alleged in his December 8, 1997,

Fourth Amended Motion to Vacate Judgments of Conviction and

Sentences with Special Request for Leave to Amend that he

possessed evidence of his brain damage at the time of his trial.[21]

---

21.  Owen's December 1997 motion included the following assertions:
- Claim V: Owen's public defender "told the court that Mr. Owen's mental health was at issue at trial, and he sought funds for an insanity defense . . . . [The public defender] also requested funds to have a CAT scan conducted and neurological testing of Mr. Owen because he found evidence of *brain damage*."  December 1997 Motion at 25 (emphasis added).
- Claim V: "Mr. Owen also suffers from organic *brain damage* that is located in the frontal lobe."  *Id.* at 28 (emphasis added).

That brain imaging technology has improved over the intervening years does not alter our conclusion, as such technology would at best be a tool that could be used to uncover relevant evidence, and of course not itself evidence. *See Branch v. State*, 236 So. 3d 981, 986 (Fla. 2018) (explaining that "scientific research with respect to brain development does not qualify as newly discovered evidence" when based on previously available data). Indeed, some form of the evidence that Owen believes he could now find through brain imaging could have been discovered anytime during the past few decades. *See Davis v. State*, 742 So. 2d 233, 237 (Fla. 1999) (finding a similar claim to be procedurally barred because PET scan technology—even if less advanced—has been reported in cases as early as 1992).

---

- Claim VI: "The jury had no idea that Mr. Owen was psychotic and delusional, or that he had *brain damage* that which rendered him incapable of forming the requisite intent to commit first-degree premeditated murder." *Id.* at 47-48 (emphasis added).
- Claim VIII: "Based on neuropsychological testing and Mr. Owen's history, an expert is also prepared to testify that Mr. Owen suffers from severe impairment due to *brain damage*." *Id.* at 87 (emphasis added).

And as to the second *Jones* prong, we are also unconvinced. In fact, the jury in the Slattery retrial recommended death by a vote of ten to two for Owen's strikingly similar murder despite his production of brain damage evidence. *Owen v. State*, 862 So. 2d 687, 691 n.3 (Fla. 2003) (listing the mitigating factors that the trial court considered, one of which was that "the defendant suffered from organic brain damage").

In any event, the circuit court correctly determined that Owen's brain damage claim is procedurally barred too. Again, in that December 1997 Motion, Owen argued that his trial counsel was ineffective for failing to investigate his mental health, and he mentioned "brain damage" several times. *See supra* note 21. Because Owen then refused to present any evidence supporting these claims, the circuit court denied his motion, and we affirmed. *Owen II*, 773 So. 2d at 515. Therefore, as Owen's brain damage argument has "already been raised and considered by this Court in prior proceedings," *Thompson*, 759 So. 2d at 657, this claim is procedurally barred, *see Hendrix*, 136 So. 3d at 1125.

Although Owen did not invoke the *McBride* "manifest injustice" exception in his motion to the circuit court on this claim, he does so

here. Even so, we are unconvinced that his arguments overcome the procedural bars just discussed. *See Gaskin*, 48 Fla. L. Weekly at S59 (concluding that the petitioner's arguments were "insufficient to overcome the procedural bar").

**3**

Owen further claims his mental illness should be a complete bar to execution under the Eighth and Fourteenth Amendments. Yet Owen correctly acknowledges that Florida courts have declined to recognize this claim. *See, e.g., Newberry v. State*, 288 So. 3d 1040, 1050 (Fla. 2019); *Long*, 271 So. 3d at 947; *McCoy v. State*, 132 So. 3d 756, 775 (Fla. 2013); *Lawrence v. State*, 969 So. 2d 294, 300 n.9 (Fla. 2007). We do so again here because Owen has presented no reason for this Court to reconsider its precedent on this issue. We therefore affirm the circuit court's denial of this claim.

**4**

Owen also appeals the circuit court's denial of his claim that thirty-seven years on death row violates the Eighth Amendment's Cruel and Unusual Punishments Clause, citing Justice Stevens' memorandum opinion for the U.S. Supreme Court's denial of

certiorari review in *Lackey v. Texas*, 514 U.S. 1045 (1995). Owen, however, rightly concedes that Florida courts have declined to recognize claims that a prolonged stay on death row constitutes cruel and unusual punishment. Indeed, this Court has consistently rejected such claims as "facially invalid." *Orme v. State*, 48 Fla. L. Weekly S85, S85 (Fla. May 18, 2023) (quoting *Lucas v. State*, 841 So. 2d 380, 389 (Fla. 2003)); *see, e.g., Long*, 271 So. 3d at 946; *Ferguson v. State*, 101 So. 3d 362, 366 (Fla. 2012); *Correll v. State*, 184 So. 3d 478, 486 (Fla. 2015); *Waterhouse v. State*, 82 So. 3d 84, 87 (Fla. 2012). Again, Owen has provided no basis for this Court to depart from precedent. Accordingly, the circuit court properly summarily denied relief on this claim.

**B**

Finally, Owen appeals the denial of two motions filed in support of his fourth motion for postconviction relief: (1) his motion for competency determination and (2) his motion for MRI and PET scan. Because we find that the circuit court appropriately denied each of Owen's 3.851 claims as untimely and procedurally barred, or not cognizable, Owen cannot relate the two motions to any substantive claim he has made in his motion for postconviction

relief. Accordingly, the circuit court correctly denied both motions. *See* Fla. R. Crim. P. 3.851(g)(1) ("[A]ll collateral relief issues that involve only matters of record and claims that do not require the defendant's input shall proceed in collateral proceedings notwithstanding the defendant's incompetency."); *Ferguson*, 101 So. 3d at 367 (affirming the denial of a motion for competency determination because the defendant failed to identify specific factual issues that required the defendant to consult counsel competently); *Bottoson v. State*, 813 So. 2d 31, 34 (Fla. 2002) (affirming the denial of the defendant's motion for SPECT/PET scan because the defendant "failed to relate the need for this testing to any substantive claim he has made in his motion for postconviction relief").

## C

As Owen is not entitled to relief, we deny his motion for stay of execution. *Dillbeck v. State*, 357 So. 3d 94, 103 (Fla. 2023) ("[A] stay of execution on a successive motion for postconviction relief is warranted only where there are substantial grounds upon which relief might be granted.") (quoting *Davis v. State*, 142 So. 3d 867, 873-74 (Fla. 2014)).

## III

We affirm the summary denial of Owen's fourth motion for postconviction relief, along with the circuit court's denial of his motion for competency determination and his motion for MRI and PET scan. We also deny his motion for stay of execution. No oral argument is necessary, and no petition for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., recused.

An Appeal from the Circuit Court in and for Palm Beach County,
    Jeffrey Dana Gillen, Judge
    Case No. 501984CF004000AXXXMB

Eric Pinkard, Capital Collateral Regional Counsel, Lisa M. Fusaro, Assistant Capital Collateral Regional Counsel, and Morgan P. Laurienzo, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, Celia Terenzio, Chief Assistant Attorney General, West Palm Beach, Florida, and Leslie Campbell, Assistant Attorney General, West Palm Beach, Florida,

    for Appellee